**Robert Eugene DORAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–228.

United States Court of Veterans Appeals.

March 8, 1994.

As Amended April 14, 1994.

Paul A. Doran (non-attorney), was on the briefs for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a March 5, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a psychoneurosis, to include post-traumatic stress disorder (PTSD). The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the BVA decision and remand the matter for proceedings consistent with this opinion.

## I. Procedural History

On August 7, 1992, the Court issued a single-judge memorandum decision which vacated the Board's November 28, 1990, denial of appellant's reopened claim for service connection for a psychoneurosis and remanded the matter to the Board for further development and readjudication. *Doran v. Derwinski,* 3 Vet.App. 388 (1992). The Court held that the "Board focused only on evidence that tended to support the denial of service connection," "ignored evidence in favor of appellant's claim," and "failed to provide 'reasons or bases' for its findings and conclusions." R. at 651. The BVA's decision contained neither a discussion of nor reasons or bases for rejecting nine specifically enumerated pieces of evidence which were before the Board at the time of its decision. R. at 652–53. Additionally, "the Board failed to consider and discuss lay evidence of appellant's apparent personality change pre- and post-service," and "fail[ed] to provide reasons or bases for its rejection of the veteran's own testimony." R. at 653. Further, the Court noted that on remand, the Board would have an opportunity to adjudicate appellant's claim for service connection for PTSD, which had been raised before but not developed by the Board. R. at 655.

In a decision dated March 5, 1993, the BVA determined that (1) the evidence received by the VA since the Board denied entitlement to service connection for a psychoneurosis in September 1976 was both new and material and that, accordingly, the claim for service connection for a psychoneurosis, to include PTSD, would be reopened; (2) appellant's psychoneurosis preexisted active service and the presumption of sound condition at enlistment had been rebutted; (3) the

preservice neurosis was not aggravated during service; and (4) service connection for PTSD was not warranted. *Robert Eugene Doran,* BVA 93–04491, at 4, 13 (Mar. 5, 1993); R. at 15, 24. A timely appeal to this Court followed.

## II. Analysis

■ As a threshold matter, this Court concludes, as a matter of law, that the evidence received by the VA since the final September 1976 decision by the regional office (RO) is new and material and that the Board properly reopened appellant's claim for service connection for a psychoneurosis. *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991) (determination whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C. § 5108 is question of law which this Court reviews de novo); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991) (articulating two-step process for reopening finally disallowed claims). Much of the additional evidence received since the RO's September 1976 decision is noncumulative, relevant to and probative of the issue at hand and, when considered along with all of the evidence of record, raises a reasonable possibility of changing the outcome of the appeal. *Colvin,* 1 Vet.App. at 174.

Having made this preliminary determination, we turn to our review of the BVA's conclusions that (1) the presumption of soundness at enlistment was rebutted and appellant's neurosis clearly and unmistakably preexisted service; (2) appellant's preexisting neurosis was not aggravated by service; and (3) service connection for PTSD is not warranted.

### A. Neurosis Existed Prior to Service

■ Under 38 U.S.C. § 1111, a veteran is afforded a presumption of sound condition upon entry into service, except for any defects noted at the time of examination for entry into service. That presumption can be overcome only by clear and unmistakable evidence that a disability existed prior to service. *See* 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b) (1993); *Monroe v. Brown,* 4 Vet. App. 513, 515 (1993); *Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991); *Green v. Derwinski,* 1 Vet.App. 320, 322 (1991). In *Bagby,* this Court set forth the standard of review of a BVA determination that the presumption of soundness has been rebutted:

> While the underlying determination may be factual—in this case, for example, the BVA could have determined as a factual matter that appellant was treated prior to service—whether those facts are sufficient to satisfy the statutory requirement that clear and unmistakable evidence be shown is a legal determination subject to *de novo* review.

*Bagby,* 1 Vet.App. at 227 (citations omitted). Accordingly, this Court is required to make an independent determination of whether the record contains clear and unmistakable evidence of sufficient weight to rebut the presumption of soundness. *Id.*

■ In this case, a portion of appellant's service medical records, including his service entrance examination report, were unavailable and are presumed to have been lost in a fire at the National Personnel Records Center (NPRC) in 1973. Based upon the record before the Court, however, we conclude, as a matter of law, that the presumption of soundness was rebutted by clear and unmistakable evidence consisting of appellant's own admissions during clinical evaluations in October and November 1950 of a preservice history of psychiatric problems.

### B. Aggravation of Preexisting Psychiatric Condition

■ The next issue to be addressed is the BVA's conclusion that appellant's preexisting psychiatric disorder was not aggravated by service. Section 1153 of title 38 of the United States Code provides that aggravation will be established by an increase in disability during service absent a specific finding that the increase was due to the natural progress of the disease. 38 U.S.C. § 1153; *see also* 38 C.F.R. § 3.306(a) (1993); *Browder v. Brown,* 5 Vet.App. 268, 270 (1993). The determination of whether a preexisting disability was aggravated by service is a question of fact. *Green,* 1 Vet.App. at 322 (citing *Hunt v. Derwinski,* 1 Vet.App. 292, 293 (1991)). The function of this Court in reviewing findings of fact by the BVA is limited to deciding whether or not such factu-

al decisions constituted clear error. *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990); *Sanders v. Derwinski*, 1 Vet.App. 88 (1990).

In practical terms, under the "clearly erroneous" rule, this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.

*Gilbert*, 1 Vet.App. at 53.

In remanding appellant's case to the BVA for further development and readjudication of the issue of whether appellant's psychiatric disorder was aggravated by service, this Court noted in its August 1992 decision that the BVA had failed to provide adequate reasons or bases for its decision:

Pursuant to 38 U.S.C.[ ] § 7104(d) ..., a BVA decision must contain a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." *See Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Especially where medical records have been lost or destroyed, "the BVA's obligation to explain its findings and conclusions ... is heightened." *O'Hare v. Derwinski*, 1 Vet.App. 365, 367; *Schafrath v. Derwinski*, 1 Vet.App. 589, 592–93 (1991). The BVA must also assess the credibility of and weight to be given to an appellant's own testimony; it is not enough to simply "state[ ] that it ha[s] 'considered' it", *Ashmore v. Derwinski*, 1 Vet.App. 580, 582 (1991), nor may the Board use its own "unsubstantiated medical conclusions". *Colvin*, 1 Vet.App. at 175.

R. at 651.

■ While the Board is not required to accept the medical authority proffered by a claimant in support of a claim, it may not refute such expert medical conclusions merely with its own unsubstantiated medical conclusions. *Colvin, supra; see also Cosman v. Principi*, 3 Vet.App. 503, 506 (1992); *Hatlestad v. Derwinski*, 3 Vet.App. 213, 217; *Budnik v. Derwinski*, 3 Vet.App. 185, 187 (1992); *Quarles v. Derwinski*, 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski*, 2 Vet.App. 34, 38–39 (1991). In *Colvin*, the Court discussed at length the requirement that the Board provide independent medical bases for its findings:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.... This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Colvin*, 1 Vet.App. at 175 (citations omitted).

■ Here, as previously noted by the Court in its August 1992 decision, the record contains several medical opinions to the effect that appellant's psychiatric condition was aggravated during service, including, but not limited to: (1) a September 1952 letter from appellant's treating psychiatrist, Dr. Bohnengel, setting an appointment with appellant for three days after his discharge and urging him to inform the discharge examiner about his "quite unusual problem of impaired vision with each heartbeat" and his "memory lapse regarding the early part of [his] service"; and (2) a letter from Dr. Abbott dated November 1974, describing examinations in 1950, 1952, and 1974, in which he observed a "marked deterioration" in appellant's physical and mental health, between July 11, 1950 (two months before service), and October 14, 1952 (less than one month after discharge). In its March 1993 decision, in contravention of the reasons or bases requirements discussed above, the Board refuted the medical opinions of record in support of appellant's claim for service connection for a psychoneurosis based solely on its own uncorroborated medical conclusions and without pointing to any independent medical bases for its rejection of such evidence. Accordingly, a remand is required.

The BVA's error in failing to point to independent medical evidence to support its

findings was compounded by its rejection of the numerous lay statements of record supporting appellant's claim without providing adequate reasons or bases for rejecting such evidence. In rejecting the lay evidence of record to the effect that appellant's psychiatric condition worsened during service, the BVA noted:

> Such statements are by lay witnesses, ostensibly untrained in medicine. While a lay person may certainly provide an eyewitness account of a veteran's visible symptoms, the capability of a witness to offer such evidence is different from the capability to offer evidence which requires medical knowledge (such as whether a preservice psychiatric disability has undergone an increase in severity during service).

*Doran*, BVA 93–04491, at 11.

■ In this case, numerous lay witnesses have provided personal accounts of appellant's personality and behavioral changes before, during, and after service. The BVA was correct in noting that while such lay witnesses are not competent to offer expert medical testimony, i.e., to diagnose appellant's psychiatric condition or offer an opinion involving medical causation, such witnesses are perfectly competent to testify as to their firsthand observations of appellant's visible symptoms. *See Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). From the BVA's cursory treatment of the lay evidence of record, however, it is unclear whether the BVA considered and/or weighed much of the lay evidence contained in the record on appeal. The Board neither provided an analysis of the credibility of many of the lay statements regarding appellant's personality and behavioral changes pre- and post-service, nor articulated its reasons or bases for rejecting such evidence. *See Colvin*, 1 Vet.App. at 171; *Cartright v. Derwinski*, 2 Vet.App. 24, 26 (1991). Accordingly, on remand, while re-evaluating the medical evidence of record, the Board also will have the opportunity to reevaluate the lay evidence of record and to assess the credibility of such evidence.

### C. Service Connection for PTSD

The BVA's treatment of appellant's claim serves to highlight a potential inconsistency between the statute and the regulation governing the development and adjudication of claims for service connection for PTSD and the pertinent provisions of the VA ADJUDICATION AND PROCEDURE MANUAL M21–1 (M21–1).

■ When a veteran seeks service connection for a disability, the RO is required to analyze and evaluate the supporting evidence in light of the places, types, and circumstances of service, as evidenced by service records, the official history of each organization in which the veteran served, the veteran's military records, and *all pertinent medical and lay evidence.* 38 U.S.C. § 1154(a); 38 C.F.R. §§ 3.303(a) (1993). With respect to injuries or disabilities incurred in or aggravated during combat, including psychiatric disabilities, the Secretary is required to accept as sufficient proof of service connection of any disease or injury alleged to have been incurred in or aggravated by service "satisfactory lay or other evidence of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service," and the Secretary is required to resolve every reasonable doubt in favor of the veteran. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d) (1993); *see Zarycki v. Brown*, 6 Vet.App. 91 (1993); *Hayes v. Brown*, 5 Vet.App. 60, 66 (1993).

■ The VA's regulation dealing with PTSD is more specific:

> Service connection for post-traumatic stress disorder requires medical evidence establishing a clear diagnosis of the condition, *credible supporting evidence* that the claimed inservice stressor actually occurred, and a link, established by medical evidence, between current symptomatology and the claimed inservice stressor. If the claimed stressor is related to combat, service department evidence that the veteran engaged in combat or that the veteran was awarded the Purple Heart, Combat Infantryman Badge, or similar combat citation will be accepted, in the absence of evidence

to the contrary, as conclusive evidence of the claimed inservice stressor. 38 C.F.R. § 3.304(f) (1993) (emphasis added); *see Zarycki,* 6 Vet.App. at 97. Thus, under the governing statutory and regulatory provisions regarding claims for service connection for PTSD, if the claimed stressor is not combat-related, appellant's lay testimony regarding in-service stressors is insufficient to establish the occurrence of the stressor and must be corroborated by "credible supporting evidence." *Id.* There is nothing in the statute or the regulations which provides that corroboration must, and can only, be found in service records.

 The possible inconsistency between the statutory and regulatory law and the M21–1 provisions is created by the language of M21–1, Part VI, para. 7.46(f) (Dec. 21, 1992.) (Although the referenced M21–1 provision became effective after the date of appellant's appeal to this Court, this Court previously has held that the provision is a substantive rule which is "the equivalent of [VA] [r]egulations" and, therefore, the provision is applicable to the instant appeal.) *See Hayes,* 5 Vet.App. at 67 (citing *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991)). The pertinent language is: "[s]ervice records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke the symptoms in almost anyone." That sentence allows two interpretations: (1) in order to grant service connection for PTSD, a veteran's testimony as to the existence of a non-combat-related stressor *must* be corroborated by the service records; or (2) those service records which are available must support, i.e., must not contradict, the veteran's lay testimony concerning his non-combat-related stressors.

The former interpretation would be considerably more restrictive than the statutory and regulatory provisions articulated above which require the VA to take due account of "all pertinent medical and lay evidence," 38 U.S.C. § 1154(a), and which require only "credible corroborative evidence," 38 C.F.R. § 3.304(f). The latter interpretation, on the other hand, is consistent with both the controlling statutory and regulatory provisions and with the unlimited language of the sentence in M21–1, which directly follows the one under scrutiny: "The existence of a recognizable stressor or accumulation of stressors must be supported." M21–1, Part VI, para. 7.46(f). Following the requirement that we attempt to construe such provisions to promote harmony rather than discord, the latter will be the interpretation applied by the Court. *Cf. Gardner v. Derwinski,* 1 Vet. App. 584, 588 (1991), *aff'd,* 5 F.3d 1456 (Fed. Cir.1993) (citing *Manhattan Gen. Equip. Co. v. Comm'r,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936) (regulation not in harmony with plain language of authorizing statute is invalid)); *Lynch v. Tilden Produce Co.,* 265 U.S. 315, 320–22, 44 S.Ct. 488, 489–90, 68 L.Ed. 1034 (1924) (same effect); *Travelstead v. Derwinski,* 978 F.2d 1244, 1250–51 (Fed.Cir.1992) (VA manual provisions cannot be promulgated that are contrary to statute).

Moreover, the VA regulatory process is expressly subject to the notice and comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553. *See* 38 U.S.C. § 501(d); *see also Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (noting that even before Congress made the VA regulatory process subject to the APA by statute in 1991, the VA by regulation in effect since 1973, as a matter of policy, had embraced the provisions of the APA with respect to regulatory development). It is certainly questionable whether an M21–1 provision which has not been adopted in accordance with the APA notice and comment requirements, but which is more restrictive than a regulation which has been so adopted, could ever properly be construed as having superseded that regulation.

 Here, although the BVA did not make a preliminary finding of fact as to whether or not appellant was engaged in combat with the enemy and, if so, whether the claimed stressors were related to such combat, appellant has not contended that the claimed stressors were related to combat and there is no indication from the record that his alleged stressors were related to combat. Accordingly, in this case, the BVA's failure to make a preliminary finding as to whether appellant was engaged in combat with the enemy and whether his stressors were relat-

ed to combat was harmless error. *See* 38 U.S.C. § 7261(b) (requiring Court to take due account of rule of prejudicial error); *Irby v. Brown,* 6 Vet.App. 132, 136 (1994) (BVA's failure to make preliminary finding regarding combat with the enemy was harmless error).

■ Pursuant to the controlling law, therefore, appellant's lay testimony regarding his in-service stressors is insufficient, standing alone, to establish service connection and must be corroborated by "credible supporting evidence." 38 C.F.R. § 3.304(f). In support of his claim for service connection for PTSD, appellant has alleged at various times during the course of the proceedings before the VA and this Court that two stressors occurred during his service: (1) an incident in which he purportedly was struck by lightning, was rendered unconscious, and had to be resuscitated; and (2) another incident in which he allegedly encountered a snake while on an infiltration course (although appellant later conceded that he was uncertain whether the snake encounter actually occurred, *see* R. at 278, 437, 486). With respect to the former stressor, the record contains corroborative statements from a fellow serviceman, Carl Heil, who purports to have witnessed lightning strike appellant and to have administered artificial respiration to appellant. R. at 593–94. In addition, there is another from a colleague, Jack Ziegler, who purports to having been told by an officer that appellant was struck by lightning. R. at 581–82. With respect to the latter stressor, the record contains a letter from a reptile specialist, Alvin L. Braswell, Curator of Lower Vertebrates at the North Carolina State Museum of Natural Sciences, regarding the possible presence of pygmy rattlesnakes in the area where appellant was stationed. R. at 363–64. As noted above, nearly all of appellant's service records were presumably lost in a fire at the NPRC and none of the existing records corroborate the occurrence of appellant's claimed stressors.

In this case, as the basis for rejecting appellant's alleged stressors, the BVA noted:

Additionally, as regards the veteran's claim for service connection for PTSD, we note that he bases his claim upon certain stressful incidents in service, specifically, an incident in which he was reportedly struck by lightning, and/or another incident in which he encountered a "snake" on an infiltration course. We note that neither of these incidents is verified by the record. The Board cannot understand how the veteran could have sustained a lightning strike sufficient to tear a hole in his helmet and melt his belt buckle without, at the same time, sustaining physical and/or other injuries sufficient to warrant medical attention. Corroborating evidence of the presence of "snakes" in the area in which the veteran was stationed is, likewise, insufficient to establish a stressful, snake-induced incident sufficient to bring on a [PTSD]. Consequently, the Board finds the veteran's allegations completely lacking in both credibility and probative value.

*Doran,* BVA 93–04491, at 8. With respect to the specific statements of Messrs. Heil and Ziegler, the Board commented as follows:

As was previously noted, the record is devoid of any medical evidence of lightning striking the veteran. Moreover, a recent statement by Jack Ziegler (a fellow serviceman), to the effect that he was told by a superior officer that "lightning ruined (the veteran's) nerves," is, similarly, unsubstantiated by the record. The Board will comment no further on these statements, in as much as their content is discussed at some length above.

*Id.* at 9.

Although the Board purported to have "discussed at some length above" the content of the statements by Messrs. Heil and Ziegler, the Court was unable to find any such discussion, much less a discussion which would fulfill the statutory requirement that the Board determine the credibility and probative value of such statements and present a statement of reasons or bases for its determinations. *See* 38 U.S.C. § 7104(d)(1). Taking the Board at its word, it appears that it rejected appellant's claim and the statements of his fellow servicemen for a single reason: the absence of support in the service records. However, as noted above, the absence of corroboration in the service records, when

there is nothing in the available records that is inconsistent with other evidence, does not relieve the BVA of its obligations to assess the credibility and probative value of the other evidence. This is particularly true where, as here, parts of the records have been destroyed. *See O'Hare,* 1 Vet.App. at 367 (BVA's obligation to explain findings and conclusions and to consider benefit-of-the-doubt rule heightened where service records are presumed destroyed). Finally, it also appears that a, if not *the,* determining factor in the BVA's decision was its inability to "understand how the veteran could have sustained a lightning strike sufficient to tear a hole in his helmet and melt his belt buckle without, at the same time, sustaining physical and/or other injuries sufficient to warrant medical attention." *Doran,* BVA 93–04491, at 8. Since a remand is required to cure the noted defects, the BVA will have the opportunity to inform its understanding, reach a decision, and support that decision with the requisite statement of reasons or bases.

### III. Conclusion

For the reasons stated above, the BVA decision is VACATED and the matter is REMANDED for readjudication consistent with this opinion. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). Moreover, if the circumstances warrant, the BVA is authorized and obligated to remand the claim to the RO for further development. *See* 38 C.F.R. § 19.9 (1993); *Littke v. Derwinski,* 1 Vet.App. 90 (1990).