**Margie M. WILLIAMS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–317.

United States Court of Veterans Appeals.

Aug. 11, 1995.

Jeffrey Wood was on the brief for the appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and John D. Lindsay, Jr., Washington, DC, were on the pleadings for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Margie M. Williams, appeals a January 28, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for pelvic inflammatory disease (PID) with adhesions, small bowel obstruction, and surgical removal of the uterus and ovaries. Record (R.) at 4. The appellant filed a brief, and the Secretary filed a motion to remand. The appellant filed a motion consenting to the Secretary's motion to remand with certain conditions. Both parties contend that a remand is appropriate, and the Court will vacate the BVA decision and remand the matter to the BVA for further development and readjudication consistent with this opinion.

## I. Background

The veteran served on active duty in the U.S. Army from August 1981 to August 1984. R. at 5. Prior to service she had had a history of surgery for chronic pelvic pain, including a 1977 laparotomy (abdominal section at any point to gain access to the peritoneal cavity, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 896 (27th ed. 1988) [hereinafter DORLAND'S] ), during which multiple adhesions were revealed and dissected. R. at 22, 24, 60. A November 1980 induction medical report indicated "normal" as to a pelvic examination. R. at 20. In November 1983, the veteran was admitted to a U.S. Army hospital with small bowel obstruction, and an ileostomy (surgical creation of opening into the ileum, DORLAND'S at 816) was performed. R. at 60. In February 1984, additional surgery was performed to "reanastomose the ileum". R. at 60, 128. During that operation a left salpingo-oophorectomy (surgical removal of uterine tube and ovary, DORLAND'S at 1481) was performed. Ibid. The diagnosis in May 1984 was "[s]mall bowel obstruction secondary to previous surgery" and "PID with left tubal ovarian cyst and pelvic abscess". R. at 61. In March 1984, she underwent "drainage of a pelvic abscess and ileostomy closure" with a right oophorectomy (removal of ovary, DORLAND'S at 1178). R. at 105–06. No separation medical examination report appears in the record. In February 1986, a complete hysterectomy (removal of uterus, DORLAND'S at 811) was performed. R. at 369–77.

The veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) a July 1984 application for VA disability compensation or pension for bowel obstruction and removal of ovaries. R. at 85. The VARO denied the claim in November 1985 and confirmed this denial in January 1986, concluding that the veteran's condition had preceded service and was the result of "maturation of her [PID]". R. at 143, 148. The veteran did not appeal this decision, and it became final.

The veteran continued to have abdominal pain and bowel problems. R. at 274, 286–87, 300, 311, 319. She filed a request to reopen her claim in April 1989. R. at 152. In May 1989, the RO found that she had failed to present new and material evidence so as to reopen her claim. R. at 172. She attempted to reopen her claim in September 1990. R. at 176. The RO sought private physicians' records and received private records from Drs. Dunsworth and Hyatt, but reported that it had not received any response from Drs. Laffer and Blocker. R. at 224. In January 1991, the RO concluded that no change was warranted in its prior denial because the additional evidence did not provide "a new factual basis" for service connection. *Ibid.*

In a March 1991 hearing, presumably in conjunction with the BVA appeal, the veteran testified under oath that after her pre-service operations her health had been normal and she had been able to perform her duties as a patrolling [sic] supply specialist (a "physically demanding" job), but that in November 1983, after removing a rusty lug nut from a truck, she felt "as though something just let go inside" and after that her abdominal pain began. R. at 230–32. She also asserted that she had never been informed by doctors that the surgery might involve removal of her ovaries. R. at 233. She also stated that Dr. Blocker had informed her that her surgery had been "botched". R. at 237. The hearing officer denied the veteran's claim and she filed a Notice of Disagreement. R. at 248, 330. The hearing officer noted that the RO had received a reply from Dr. Blocker in May 1989, indicating that he had no record of treatment after October 1987 and that a November 1990 request for more information from Dr. Blocker had elicited no reply. R. at 331–32. In August 1991, the veteran filed a VA Form 1–9 (Substantive Appeal to the BVA). R. at 351–52.

In November 1992, the BVA obtained a Board medical advisor's opinion (BMAO) from one of its physician employees, Dr. Rheingold, who stated that he believed that "her problems were not aggravated by service" and that her "problems [had] predated service and were responsible for subsequent natural progression of her [PID]." R. at 407. In December 1992, the veteran's representative indicated that he had no further "comments". R. at 409. The Board cited and relied on Dr. Rheingold's opinion in the January 26, 1993, decision here on appeal. R. at 7–8. A timely appeal to this Court followed.

## II. Analysis

■ Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested to a degree of 10% or more within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1131, 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1994).

If a disease or injury preexisted service but was aggravated by service, the following presumption of aggravation applies:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153; *see also* 38 C.F.R. § 3.306. "Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service." 38 C.F.R. § 3.306(b).

■■ The determination whether a disability found to be preexisting was aggravated by service is a question of fact. *See Doran v. Brown*, 6 Vet.App. 283, 286 (1994)

(citing *Green v. Derwinski,* 1 Vet.App. 320, 322 (1991), and *Hunt v. Derwinski,* 1 Vet. App. 292, 293 (1991)). Factual determinations are reviewed under the "clearly erroneous" standard (38 U.S.C. § 7261(a)(4)): "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them". *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

■ In *Thurber v. Brown,* where a claimant had not been notified that the Board would rely upon a medical treatise, the Court held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [Statement of the Case (SOC) or Supplemental SOC] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it.

*Thurber v. Brown,* 5 Vet.App. 119, 126 (1993). This "opportunity to respond" was subsequently interpreted to mean not only notice and an opportunity to *comment* but also "the claimant's right to submit additional *evidence*" in rebuttal of a BMAO. *Austin v. Brown,* 6 Vet.App. 547, 551 (1994) (emphasis added); *see also* 38 C.F.R. §§ 20.903, 20.1304 (1994). In *Austin,* this Court expressly held that a BMAO is valid only if notice is given to a claimant that it will be requested and the claimant has the opportunity to present evidence in rebuttal. *Id.* at 551, 553. The Court in *Austin* also discussed whether BVA Memorandum No. 01–91–21, June 24, 1991 [hereinafter Memorandum I], was issued in compliance with 38 C.F.R. §§ 1.12 and 1.551, which provide for "general notice" through publication in the Federal Register of proposed regulatory development and for the opportunity for public participation in such development. *See* 38 C.F.R. §§ 1.12, 1.551(a) (1994). Section 1.551 provides in pertinent part:

> (b) Administration and Staff office heads will develop, with the approval of the Secretary, for submission ... for publica-

tion for the guidance of the public, [VA] regulations containing:

> (1) Statements of the general course and method by which [VA] functions are channeled and determined, including the nature and requirements of all formal and informal procedures available.

> (2) Rules of procedure and instructions as to the scope and contents of all papers, reports, or examinations.

> (3) Substantive rules of general applicability adopted by [VA] as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by [VA].

> (4) Every amendment, revision, or repeal of the foregoing.

> (c) Except to the extent that a person has actual and timely notice of the terms thereof, no person shall in any manner be required to resort to, or be adversely affected by any matter required by this section to be published in the FEDERAL REGISTER and not so published.

38 C.F.R. § 1.551(b), (c); *see also Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990).

Section 1.12 enumerates the cases in which exceptions to VA "general notice" policy might be authorized by the Secretary or one of the Secretary's deputies when public comment is not required by statute:

> (a) The proposed regulations consist of interpretative rules, general statements of policy, or rules of [VA] organization procedure or practice, or (b) when [VA] for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

38 C.F.R. § 1.12.

The Court stated in *Austin* that there was not enough evidence on record to determine whether one of the § 1.12 exceptions applied. It noted, however, that unless Memorandum I "was authorized under the exception provision of § 1.12(a), the Memorandum is defective on its face under § 1.12(b) for not having incorporated the findings and reasons for such findings with respect to notice and pub-

lic procedure being 'impracticable, unnecessary, or contrary to the public interest'." *Austin*, 6 Vet.App. at 554. The Court did not hold that either § 1.12 or § 1.551 must be complied with in order to authorize Memorandum I, but the Court did indicate that if those requirements were not met, the BVA was required to explain why compliance was not necessary. *Ibid.; see also Gilbert v. Derwinski*, 1 Vet.App. at 56–57.

After the *Austin* opinion was issued, the BVA promulgated Memorandum No. 01–94–17, August 16, 1994 [hereinafter Memorandum II], providing generally that BMAOs should no longer be used in individual appeals. A BMAO which had been obtained but not yet transferred to a Board Section was to be removed from the record and destroyed. Memorandum II, para. 3. A BMAO already transferred to a Board Section was not to be used unless it was determined that such use did not prejudice the veteran. *Id.* at para. 5. Because of its disposition of this appeal, the Court need not reach the issue of the validity of the Memorandum II in view of the issues raised in *Austin, supra*, or of the differential treatment for which that Memorandum provides.

■ In the present case, the appellant is seeking service connection for pelvic and bowel disorders. The Secretary admitted that the BVA did not comply with 38 C.F.R. § 20.903 (1994) or with the express holding of *Austin*, in that it failed to give the veteran or her representative the opportunity to submit *evidence* in rebuttal to the BMAO. Motion to Remand (Mot.) at 2, 3. Therefore, the Secretary contends that the case should be remanded to the BVA for further development and readjudication. The Secretary represented to the Court that the RO on remand will provide for a "physical examination, and an opinion from an independent medical expert [IME], *without consideration* of [the BMAO]", because the BMAO was "obtained in apparent contravention to this Court's notice requirements set forth in *Austin*." Mot. at 3, *see also* 38 C.F.R. § 20.901(d) (1994). The appellant consented to the Secretary's motion on the following two conditions: she requests the Court (1) to "specifically prohibit [the] BVA from consid-

ering [the BMAO] *under any circumstances*", and (2) to specify that, for purposes of this case, the "prohibition supersedes" paragraph 5 of Memorandum II, which allows the Board to consider opinions from its own medical advisors under some circumstances. Appellant's Consent to Secretary's Mot. at 2.

■ The Court will grant the Secretary's motion to the extent provided herein and vacate the January 28, 1993, Board decision and remand the matter to the BVA for further development and readjudication consistent with that motion and this opinion. If any use is made of the BMAO on remand, the BVA should answer the questions posed by this Court in *Austin, supra*. First, the BVA must give an adequate statement of reasons or bases for noncompliance with the notice requirements in 38 C.F.R. § 1.551(b) and (c), or to explain why compliance was not necessary pursuant to § 1.12. Second, the Board must explain why it requested the BMAO instead of remanding the case to the RO under 38 C.F.R. § 19.9 (1994) and, as that regulation provides, "specifying the action to be undertaken". *Austin*, 6 Vet.App. at 553. Third, the Board must provide an adequate statement of reasons or bases as to how it has complied with Memorandum II. Finally, given that the Secretary's motion, incorporated by reference in this opinion, prohibits the use of the BMAO by the new examiner or the IME, if the BMAO is later used by the RO or BVA in the readjudication of the case after the further development ordered by this opinion is carried out, it must be explained how, then, the new physical examination could be utilized in view of the requirement in 38 C.F.R. §§ 4.1 (1994) that VA examiners view each disability "in relation to its history", *see* cases cited in VA Gen.Coun.Prec. 20–95 (July 14, 1995), and how an IME opinion could be utilized in light of the conclusion in *Bielby v. Brown*, 7 Vet. App. 260, 268 (1994), that an "IME's ... opinion [on the issue of causation] is without evidentiary value" if rendered without "review [of] a claimant's file".

The Court notes that it recently held in *Robinette v. Brown*, 8 Vet.App. 69, 76–77 (1995), that a statement by a VA claimant

**138**

that a physician had told him that his current condition was related to service is not competent medical evidence but that, under 38 U.S.C. § 5103(a), an original claim was incomplete when VA had not told the claimant that his own statement was not competent medical evidence and that a direct statement by the physician would be needed. Whether the *Robinette* holding should be applied to a claim to reopen, such as in the instant case, is an issue before the Court in *Graves v. Brown*, 8 Vet.App. 97 (briefing order issued on July 31, 1995). That issue need not be resolved in this case, because in the remand here ordered the appellant will be free to submit additional evidence, including any statement by Dr. Blocker on the "botched" surgery issue.

### III. Conclusion

Upon consideration of the record, the brief of the appellant, the Secretary's motion to remand, and the appellant's motion, the Court holds that the BVA violated *Austin*, *supra*, when it failed to notify the claimant or her representative of the request for a BMAO or to provide the opportunity to present evidence in rebuttal. The Court grants the Secretary's motion (which is incorporated in this opinion by reference) to the extent provided in this opinion and vacates the January 28, 1993, BVA decision and remands the matter for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1310, 5107(a), 7104(d)(1), 7261; 38 C.F.R. § 4.71a; *Fletcher v. Derwinski*, 1 Vet. App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533–34 (1995). "On remand, the [claimant] will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse,

may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.