**YR, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–778.

United States Court of Veterans Appeals.

Aug. 27, 1998.

Barbara J. Cook, Cininnati, OH, was on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Rosalind Eager, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

HOLDAWAY, Judge:

The appellant appeals a January 1997 decision of the Board of Veterans' Appeals (BVA or Board) that denied, on the merits, her claims for service connection of post-traumatic stress disorder (PTSD) and of a back disability. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will vacate the decision of the Board in part, affirm the decision in part, and remand a matter for readjudication.

## I. FACTS

The appellant served on active duty in the U.S. Air Force from January 1969 to May 1972. Her preinduction examination did not reveal any psychological or back abnormalities. The appellant's service medical records note that she had an episode of mild transient anxiety while attending technical school, that she had had no subsequent problems, and that the appellant was found fit to hold the security clearance necessary for her job. Her service records do not document that she was sexually assaulted in service, though she claims such an assault forms the predicate for her PTSD and back claims. She was discharged before completing her four-year term of enlistment, and her April 1972 separation examination does not report any psychological abnormalities or a back injury. The examination indicated that she was not given a pelvic examination as part of her separation examination because she had received a vaginal pelvic examination from a private medical doctor two months earlier. In June 1994, the appellant applied for disability compensation for PTSD and residuals of a back injury in service.

### A. PTSD

In November 1974, approximately one-and-a-half years after the appellant was discharged, she was admitted to a hospital for two weeks for an overdose of medicine used for the treatment of schizophrenia. Postservice medical records indicate that from 1974 to 1994, she was treated for chronic alcoholism, depression, paranoia, schizophrenia, and anxiety. Her medical records noted that she was generally withdrawn and fearful. During that treatment, the appellant's account of her life, i.e., when she had started drinking, how may siblings she had, what her family life was like, and whether her military experience was good or bad, was at times inconsistent.

In April 1994, the appellant sought medical treatment for alcoholism, nerves, anxiety, and flashbacks from her military service. She reported that she had flashbacks from a sexual assault while in the military. In May 1994, the appellant reported to a VA medical doctor that she had been raped in service. The doctor recorded that she had been instructed by her assailants that she would be killed if she reported the incident. She stated that she had never reported what had occurred, and therefore, she had never received psychotherapy to help her with this issue even though over the years she had obtained therapy for her alcoholism. The appellant reported that she had flashbacks and nightmares, had difficulty sleeping, had no friends, and would easily become irritated and angry. The doctor diagnosed the appellant with alcohol dependency and PTSD which "seem[ed] related to difficulties she had while in service." Since that time, the appellant has been repeatedly diagnosed with PTSD relating to her account of being sexually assaulted during service. In November

1994, the appellant was administered the Minnesota Multiphasic Personality Inventory–2, and the results suggested that the appellant had chronic incapacitating symptomatology from PTSD.

The appellant wrote a letter to VA in August 1994 explaining that before the assault in the military she had never had a reason to visit a medical doctor, but that since the assault she had needed ongoing medical treatment. She also reported that she had started drinking to deal with the assault. She reported that after the assault she had been sent to a psychiatrist while still in service, but that she could not tell him about the incident. She said she did not report the attack because she was afraid she would be killed and that she would lose her security clearance, which was essential to her job as a communication center specialist. She stated that she believed that reporting the sexual assault would have compromised her security clearance. The appellant reported that she was hit on the head and thrown to the floor when she was assaulted. A VA regional office denied, in January 1995, the appellant's claim for service connection. The appellant filed a Notice of Disagreement in March 1995.

In February 1995, the appellant's sister wrote a letter to VA testifying that the appellant had told her about the assault and rape. She explained that she had come to visit her sister two days after the assault. When she saw the appellant, "[h]er lips were swollen, the right side of her face and eye were black and blue, [and she had] abrasions on her forehead[ ] and multiple black and blue marks on both arms." She stated that the appellant had trouble walking and had appeared to be in shock. She explained that she had begged her to go to the hospital, get help, and report the incident. She also said that she had not reported the assault because of her sister's fear of retribution and of losing her security clearance.

In July 1995, I. Marlene Pharr, a licensed clinical social worker, placed the appellant under hypnosis in order to confirm that she had been raped while in service. The session report indicates that the appellant was suc-

cessfully placed under hypnosis and Ms. Pharr recorded the following:

> She was back in the communications security room on duty at Andrews Air Force Base where the rape occurred [and she was] focusing on "the paper, the paper". [sic] Apparently there was a kind of teletype or computer printout sheets [that] the patient was looking at when two soldiers entered the room from behind her. One grabbed her and said[,] "Take it like a soldier". [sic] She quickly began to relive the event becoming emotional and frightened. She grabbed her vagina stating "They're hunting me. There's so much blood". [sic] She had curled into a fetal position when I stopped the hypnosis[ ] because I thought it to be undue trauma.

Ms. Pharr stated that "[t]here is no doubt whatsoever that this woman was raped traumatically, and is still living in that event. She is caught in her 'essential trauma' all the time. She is just there." In September 1995, the appellant filed a substantive appeal to the BVA.

The appellant testified about the rape at a VA hearing in February 1996. She described the rape and said that her attackers had threatened to kill her if she reported it. The appellant reported that she was also afraid of losing her security clearance and her job. She stated that she was sent to a military psychiatrist afterward, but that she was afraid to tell him about it. She stated that after the sexual assault she was unable to function, and she was discharged early. She explained that her face had had visible injuries on it from the attack. She was sure that she had been questioned about them, but she said she was still numb at the time and could not remember what her responses had been. She explained that she had tried to cover the injuries with make-up. She also testified that after service she had gone to a mental health center and reported the rape, but they had medicated her and placed her in a locked ward. She noted that she had not been able to obtain the records for that medical treatment.

### B. Back Disability

The appellant claims that she injured her back when she was thrown to the floor dur-

ing the assault in service. The appellant's sister had also testified that the appellant had had chronic neck and back pain since she was raped in service. The first instance of back injury documented in the appellant's medical records was in July 1987 when she was diagnosed with a lumbar strain from lifting a fifty-pound mail bag. In 1988, the appellant continued complaining of low back pain. In October 1991, the appellant was treated for low back pain after she was involved in an automobile accident. An x-ray examination of her back at that time was normal. The appellant continued to receive treatment for back and neck pain through October 1992. She was involved in another car accident in May 1992 which resulted in additional cervical and lumbar pain.

After the appellant applied for VA benefits for her alleged back disability, she was afforded a VA orthopedic examination in August 1994. An x-ray examination of her back did not reveal any abnormalities. The examiner opined that the appellant's back pain was probably psychophysiological in nature. An x-ray examination of the appellant's abdomen noted degenerative changes in her lumbosacral spine. An MRI performed in August 1994 provided normal studies of the appellant's lumbar and cervical spines. The appellant submitted a handwritten note stating that there had been an "incidental finding" of arthritis of the lumbosacral spine. The source of this note is not clear.

The appellant was again examined in November 1994 for her back disability. The examiner stated that he had reviewed the x-rays taken in August 1994 and that there were no abnormalities and no evidence of degenerative disc disease in the x-rays. The examiner stated, "[H]er x-rays are completely within normal limits. I can see no indication for low back treatment at the present time. Any relation to service is problematic." A medical report from September 1995 noted that the appellant had had x-rays the previous year that showed evidence of degenerative disease of the lumbosacral spine.

### C. The BVA Decision

On appeal to the BVA, the Board found that the evidence did not establish that the sexual assault had occurred in service and denied the appellant's claim for service connection for PTSD. The Board based its finding, in part, on the absence of any mention of a sexual assault in her service medical records and postservice medical records. The Board also stated that the fact that the appellant had not reported the sexual assault from 1972 to 1994, when she had had repeated admissions and treatment for psychiatric problems, and where there was no fear of retribution from her attackers or of losing her security clearance, weighed against the appellant's claim for service connection. The Board found it "curious," that in 1979, she had described her time in the military as the best time of her life. The Board also explained that it was not bound to accept the appellant's uncorroborated account of the sexual assault or the medical opinions that her PTSD was precipitated by the assault as evidence that the assault occurred. The Board also denied her claim for service connection of her back pain because there was no objective evidence of a current back disability that was related to service.

## II. ANALYSIS

### A. Service Connection for PTSD

■ To establish service connection for PTSD, a veteran must satisfy three evidentiary requirements. *See* 38 C.F.R. § 3.304(f) (1997); *Cohen v. Brown*, 10 Vet.App. 128, 138 (1997). First, the veteran must submit a "current, clear medical diagnosis of PTSD." *Id.* A clear diagnosis of PTSD is one that is "unequivocal." *Id.* at 139. Second, "[t]here must also be evidence of the *occurrence* of the stressor." *Id.* at 145. "[I]f the claimed stressor is not combat[ ]related, the appellant's lay testimony regarding in-service stressors is insufficient to establish the occurrence of the stressor and must be corroborated by 'credible supporting evidence.'" *Doran v. Brown*, 6 Vet.App. 283, 289 (1994). "Credible supporting evidence" is not limited to service department records, but can be from any source. *See Cohen*, 10 Vet.App. at 147; *Doran, supra.* However, "[a]n opinion by a mental health professional based on a postservice examination of the veteran cannot be used to establish the occurrence of the

stressor." *Cohen,* 10 Vet.App. at 145 (citing *Moreau v. Brown,* 9 Vet.App. 389, 394–95 (1996)); *see also Wood v. Derwinski,* 1 Vet. App. 190, 193 (1991). Third, the veteran must present medical evidence of a causal nexus between the specific claimed in-service stressor and the current PTSD symptomatology. *See Cohen,* 10 Vet.App. at 138.

It is undisputed and clear from the record that the appellant has been unequivocally diagnosed several times with PTSD. It is also clear that the mental health professionals' diagnoses accepted her account of an in-service sexual assault as the precipitating cause of her PTSD. Therefore, the only remaining disputed issue is whether the veteran has submitted credible evidence to establish that the claimed in-service assault actually occurred. Assuming the truth of her and her sister's testimony that she was raped in service, her claim is well grounded. *See Moreau, supra.*

 The Board is required by statute to base its decisions on "all evidence and material of record" and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(a), (d)(1); *see also Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting material evidence submitted by or on behalf of the claimant. *Id.* at 57; *see also Gabrielson v. Brown,* 7 Vet.App. 36, 40 (1994). "[T]he absence of corroboration in the service records ... does not relieve the BVA of its obligation to assess the credibility and probative value of the other evidence." *Doran,* 6 Vet.App. at 290–91. Because it is not a function of this Court to make factual determinations, failure by the Board to provide adequate reasons and bases frustrates judicial review and is remandable error. *See Cartright v. Derwinski,* 2 Vet.App. 24, 26 (1991); *Gilbert,* 1 Vet.App. at 57.

 The appellant contends that the Board failed to provide an adequate statement of reasons and bases analyzing the weight and credibility of all relevant evidence of record that supports her account of the sexual assault in service. The Court agrees. The Court has held that while interest in the outcome of a proceeding "may affect the credibility of testimony, it does not affect competency to testify." *Cartright,* 2 Vet. App. at 25 (citing *Dixie Ohio Express Co. v. Lowery,* 115 F.2d 56, 57 (5th Cir.1940)); *see also Hatlestad v. Derwinski,* 1 Vet.App. 164, 170 (1991). Paragraph 5.14c(5), Part III, of the VA Adjudication Procedure Manual M21–1 (February 20, 1996), states, with respect to claims based upon a personal assault:

> The service record may be devoid of evidence because many victims of personal assault, especially sexual assault and domestic violence, do not file official reports either with military or civilian authorities. Therefore, development to [sic] alternative sources for information is critical. Alternative sources that may provide credible evidence of the in-service stressor include:
>
> . . . .
>
> (d) Testimonial statements from confidants such as family members, roommates, fellow service members, or clergy.

The Board did not discuss the weight and credibility of the appellant's sister's written statement that (1) two days after the alleged rape the appellant had told her about the attack and (2) that she had observed that the appellant had injuries on her face and arms, that she had trouble walking, and that she was in shock. The statement supports appellant's claim, and the Board's failure to address its weight and credibility was prejudicial error. *See Gabrielson, supra.* This does not mean that the Board was required to accept the sister's statement. There may or may not be good reasons for rejecting it. However, they were required to address it and give reasons and bases for the acceptance or rejection. Also, and more important, the Board entirely failed to consider the hypnosis evidence, let alone discuss its weight and credibility. *Cf. Rock v. Arkan-*

*sas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding that a state's legitimate interest in barring unreliable evidence did not justify a per se rule excluding the use of all hypnotically refreshed testimony). In a system where equipoise is the standard of proof, evidence of this nature cannot be ignored, and when considered, then reasons and bases must be given for its acceptance or rejection. On remand, the Board should give careful consideration to all the evidence supporting the appellant's claim and provide reasons and bases analyzing the evidence's weight and credibility. The VA Adjudication Procedure Manual M21–1, Part III, paragraph 5.14c, provides guidance on the types of evidence that may serve as "credible supporting evidence" for establishing service connection of PTSD which allegedly was precipitated by a personal assault during military service.

## B. Back Disability

■ Section 5107(a) of title 38, U.S.Code, requires that "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). For a claim to be well grounded, a claimant must submit evidence of each of the following: (1) a medical diagnosis of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) *aff'd,* 78 F.3d 604 (Fed.Cir.1996) (table). A BVA decision on whether a claim is well grounded is a matter of law which this Court reviews de novo. *See id.* at 505. The truthfulness of the evidence is presumed when determining whether a claim is well grounded. *See Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993). The duty to assist is only triggered after the claimant has filed a well-grounded claim. *See Anderson v. Brown,* 9 Vet.App. 542 (1996).

■ The appellant's claim for service connection for a back disorder is not well grounded. The appellant has submitted x-ray evidence which indicated that her lumbosacral spine had a degenerative disease. She has also submitted treatment records for her recurrent back pain. The appellant has testified that her back was injured during the sexual assault in service. However, even assuming she incurred a back injury in service, she has not submitted evidence that demonstrates an etiological link between her back injury from the alleged assault in service and her current back pains. To the contrary, the evidence indicates that her back problems probably began after an on-the-job injury and were aggravated by three car accidents. Furthermore, one VA examiner stated that any link between her alleged in-service injury and her current back pain was "problematic." Therefore, her claim is not well grounded. The Board's denial of the appellant's claim on the merits, when the claim was in fact not well grounded, was nonprejudicial error. *See Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc). Because the appellant's back disability claim is not well grounded, the Secretary had no duty to assist her in factually developing that claim. *See Anderson, supra.*

## III. CONCLUSION

The decision of the Board denying the appellant's claim for service connection of PTSD is VACATED and REMANDED for readjudication. The decision of the Board denying the appellant's claim for service connection of a back disability is AFFIRMED.