﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/19 Archive Date: 04/30/19

DOCKET NO. 181010-1277
DATE: April 30, 2019

ORDER

Service connection for posttraumatic stress disorder (PTSD) is granted.

REMANDED

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDING OF FACT

PTSD is attributable to service.

 

CONCLUSION OF LAW

PTSD was incurred during wartime service. 38 U.S.C. § 1110, 1131; 38 C.F.R. §§ 3.303, 3.304(f).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the Navy from June 1962 to June 1965.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA's decision on their claim to seek review. The Board is honoring the Veteran's choice to participate in VA's test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form on February 10, 2018. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

 

Service connection for posttraumatic stress disorder

The Veteran seeks PTSD, asserting that it was caused by the stressor of serving long hours locked in the excessively hot boiler room aboard the USS Sarsfield (DD 837) to include under armed guard during frequent general quarters (GQ). 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred.

It is uncontroverted that the Veteran served as a boiler operations helper aboard the Sarsfield, not during a period of war, and that he did not earn any awards or decorations. See Veteran’s DD 214. It is also uncontroverted that he was diagnosed with PTSD due to the in-service stressor of his service in the boiler room during a November 2014 VA PTSD disability benefits questionnaire (DBQ) by a VA psychologist as well as in a September 2014 letter from a treating VA psychiatrist. 

Veteran’s stressor is deemed not related to combat and the record does not show he participated in combat. Thus the law requires verification of the claimed stressor. That is what the Board must determine. Where a determination is made that the Veteran did not “engage in combat with the enemy,” or the claimed stressor is unrelated to combat, the Veteran’s lay testimony alone will not be enough to establish the occurrence of the alleged stressor. See Moreau v. Brown, 9 Vet. App. 389, 395 (1996); Dizoglio v. Brown, 9 Vet. App. 163, 166 (1996). In such cases, the record must include service records or other credible evidence that supports and does not contradict the Veteran’s testimony. Doran v. Brown, 6 Vet. App. 283, 289 (1994). Moreover, a medical opinion diagnosing PTSD does not suffice to verify the occurrence of the claimed in-service stressors. See Moreau, 9 Vet. App. at 395-396; Cohen v. Brown, 10 Vet. App. 128, 42 (1997).

 

VA is required to evaluate the supporting evidence in light of the places, types, and circumstances of service, as evidenced by service records, the official history of each organization in which the veteran served, the Veteran’s military records, and all pertinent medical and lay evidence. 38 U.S.C. § 1154 (a).

For the following reasons, service connection for PTSD is warranted here.

The Veteran has described the conditions of his service in the boiler room as working in confined spaces including scraping and chipping lead paint off of the asbestos wrapped pipes and valves. He had to crawl inside the boiler to scrape off the carbon deposits. He was initially in the Boston Naval Yard with the ship, but when the ship went to sea trials he found out how hot the boiler room got. It was routinely 130 degrees, and at times hotter, and he had no protection. He stated that when the ship went to GQ he would be locked in the boiler room in unbearable temperatures with an armed guard there to see that none of the hatches were opened. There was no ventilation. When they got to Key West there was to GQ quite a bit for two and a half years owing to the recent Cuban conflict. He stated the ship was involved in the Cuban conflict although they were not specifically listed. They were stationed at Key West and would go to Cuba on numerous occasions. He found the confinement and the heat of the boiler room to be physically and mentally challenging and asked for a transfer but it was never granted. He often relives the conditions of the boiler room in his sleep and has night sweats. 

Service personnel records are not inconsistent with the Veteran’s assertions inasmuch as they show he was aboard the Sarsfield and he worked as a boiler helper. They do not show that the ship was involved in the Cuban conflict but do show it was stationed at Key West. A brief review of the Sarsfield’s activities reveals that it was indeed at the Boston Naval Yard and then went on to Key West in 1963. Information readily available online reflects that the ship appears to have performed some activities in Guantanamo Bay to include refresher training after it was fitted with new weapons systems, radar and sonar in 1963. 

Current treatment records include VA treatment for PTSD in which the Veteran reports that the hot furnace in his house upsets him and makes him think of the boiler room on the ship, giving him flashbacks.

In the November 2014 VA PTSD examination, the examiner opined that the Veteran currently met the DSM-V criteria for PTSD. The examiner explained that the Veteran’s, “PTSD appears to be a result of his military service and related to his fear of in-service hostile military or terrorist activity; specifically while he was assigned to the USS Sarsfield and was confined in the boiler room during threats of attack by enemy submarine and aircraft.” The examiner had noted the Veteran described being confined to the boiler room for up to 12 hours when there was a threat of attack and they were at GQ with no fresh air or knowledge of what was happening. 

A September 2014 letter from a VA psychiatrist treating the Veteran indicated that the Veteran has PTSD connected to his service in the boiler room where he was in 130 degree temperatures for 12 hours at a time to include during lockdowns with armed guards. 

The Veteran has written a clarifying statement to VA explaining that some of his statements were taken out of context in the medical opinions. He essentially stated he was not afraid of the anti-submarine or aircraft attacks onboard ship. Instead, he spent a great deal of time testing anti-submarine devices and thus they were at GQ a great deal, which resulted in him being confined to the boiler room a great deal. He found it stressful and terrifying especially when an armed guard was stationed there to prevent him from leaving. He emphasized that it was his experiences in the boiler room that he believes constitute a stressor.

In light of the basically consistent reporting of the stressor and the fact that it is generally consistent with the circumstances of the Veteran’s service, the Board is unable to be rationally conclude that the stressor did not happen. The Board notes that the Veteran’s reporting has not been wholly consistent or has not been consistently recorded, but also notes that the gist of his statements are that the stressor was the actual time in the boiler room. The nexus opinions are still probative under this scenario. The Board concludes that the stressor is sufficiently supported in this case. There is a valid diagnosis of PTSD based on the stressor. The Veteran’s PTSD is at least as likely as not related to his naval service, under the specific facts of this case.

REASONS FOR REMAND

TDIU is remanded.

The Veteran asserts that he is unable to work due to service-connected PTSD. See October 2014 VA form 21-8940. He explained that he stopped working in 2006 because he could not control his anger with customers and was having flashbacks which affected his work performance. The Board notes that the Veteran meets the basic schedular rating criteria to be considered for TDIU set forth at 38 C.F.R. § 4.16 (a) even without the grant of service connection for PTSD herein inasmuch as his other disabilities, asbestosis (60%), hearing loss (20%) and tinnitus (10%) in combination are rated 70 percent from January 12, 2011. 

TDIU is remanded to correct a duty to assist error that occurred prior to the rating decision on appeal. The AOJ obtained a November 2014 examination report prior to the rating decision on appeal. However, this examination report did not provide any rationale for the conclusion that, “PTSD symptoms (irritability & anxiety) have impacted his interpersonal relationships and in the past have negatively impacted his occupational functioning; however his symptoms would not preclude gainful employment.” As such, the examination is inadequate and further development is required for VA to fulfill its duty to assist the Veteran. Barr v. Nicholson, 21 Vet. App. 303 (2007) (once VA undertakes to provide a medical examination or opinion, it must ensure that the examination or opinion is adequate). An addendum must be obtained which provides an opinion supported by adequate rationale.

The AOJ must implement the grant of service connection for PTSD.

The matters are REMANDED for the following action:

Obtain an addendum opinion, supported by adequate rationale, regarding the impact of the Veteran’s PTSD on his occupational functioning.

 

H. N. SCHWARTZ

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD N. RIPPEL

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.