# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-3204

THOMAS P. CHOTTA, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Motion for Panel Decision

(Argued November 28, 2007          Decided    March 11, 2008  )

*John Ryan Prairie*, of Washington, D.C., argued the case to the Court for the appellant; *Mark R. Lippman,* of La Jolla, California, submitted the brief.

*Tracy K. Alsup*, with whom *Tim S. McClain*, General Counsel, and *R. Randall Campbell*, Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and LANCE, *Judges*.

LANCE, *Judge*: The appellant, Thomas P. Chotta, appeals through counsel an October 7, 2005, decision of the Board of Veterans' Appeals (Board) denying entitlement to an initial disability rating in excess of 50% prior to January 20, 1999, for post-traumatic stress disorder (PTSD).  In a July 25, 2007, single-judge memorandum decision, the Court affirmed the Board's October 7, 2005, decision.  Subsequently, on August 13, 2007, the appellant filed a timely motion for reconsideration, or in the alternative, for panel consideration.  The appellant's motion for a panel decision is granted. The parties each filed briefs, and the Court heard oral argument in the case.  The July 25, 2007, single-judge decision is withdrawn and this opinion is issued in its place.  For the reasons that follow, we will vacate the Board's October 7, 2005, decision regarding the appellant's initial PTSD rating and remand the matter for further adjudication.

## I. BACKGROUND

The appellant served in the U.S. Army on active duty from October 1941 until September 1945. Record (R.) at 35. In March 1946, he filed a claim for compensation for a nervous condition. R. at 32-37. Medical records show that the veteran was diagnosed with psychoneurosis, also labeled anxiety reaction. R. at 102. However, the Pittsburgh, Pennsylvania, VA regional office (RO) denied service connection for a nervous condition in May 1946. R. at 37. The RO also denied a claim for psychoneurosis in November 1947 finding that there was no record that the condition was treated, incurred, or aggravated by the appellant's military service. R. at 108. Between 1948 and 1997, the record contains no medical records relating to the appellant's PTSD condition.

In April 1997, the appellant submitted a form stating he wished to reopen and amend his 1947 service-connection claim to include PTSD. R. at 120. In March 1998, this claim was denied (R. at 171), and he filed a March 1998 Notice of Disagreement (NOD) (R. at 184). In June 1998, the appellant also filed a request for revision based on clear and unmistakable error (CUE), asserting that the original 1946 and 1947 RO decisions denying service connection for his mental conditions were erroneous because a VA doctor had clearly diagnosed him as having "'residuals of battle fatigue, which is reflected in a nervous condition.'" R. at 187 (quoting R. at 89). In July 1998, the appellant was seen by a private physician who diagnosed him with PTSD. R. at 232.

In April 1999, the RO granted service connection for PTSD with a 50% disability rating, effective April 30, 1997, the date of receipt of the claim for PTSD. R. at 247-50. In May 1999, the appellant made a claim for increased compensation due to total disability based on individual unemployability (TDIU), stating that he had been forced to quit his job because his nerves "became so bad." R. at 261-62. In May 1999, the appellant filed an NOD with the 50% disability rating assigned for his PTSD (R. at 268), and in August 1999 he underwent another VA medical evaluation (R. at 297). The TDIU claim was granted, effective April 30, 1997. R. at 310.

In May 2001, the only issue on appeal before the Board was the assertion of CUE with respect to the 1946 and 1947 decisions, and the Board determined there was no CUE. R. at 354-60. On appeal to this Court in March 2003, the parties agreed to a joint motion to terminate the appeal and stipulated that the Secretary would grant service connection for PTSD, effective from September 27, 1947. R. at 374-80. The parties also agreed that the appropriate disability rating

2

would be determined by the agency of original jurisdiction subject to the right of appeal, and the Court granted the parties' motion. R. at 378, 382.

In assigning the disability rating for the appellant's PTSD condition in June 2003, the RO considered that the appellant was hospitalized at a VA facility on September 19, 1947, for an "anxiety reaction." R. at 390. The RO noted that the claims folder was devoid of any medical evidence related to the claimed anxiety until 1997. *Id.* The RO stated that it could not, at that point in time, reconstruct valid evaluations between 1947 and 1997. *Id.* The RO granted a 50% disability rating for PTSD effective from September 1947 until January 1999, and a 70% disability rating from January 20, 1999. R. at 400.

After the appellant filed an NOD with the RO's June 2003 rating decision, VA issued a Statement of the Case (SOC), explaining why the appellant was not entitled to an evaluation greater than 50% between 1947 and 1999. The RO stated that

> [a]n historical review of the evidence of record showed examiners feeling the veteran was totally disabled from 1/47 to 9/47, but at that time able to do light work. The veteran was able to find employment almost immediately in 11/47, and was employed full-time (39) years until he retired. Based on the overall evidence of record, an evaluation of 50 percent for moderate symptoms from 9/27/47, is supported and no more. The veteran was able to maintain full-time employment, he was never hospitalized after 9/47, and was not on any medication to control his symptoms until 1997, based on the evidence of record.

R. at 459.

Before the Board again, the case was remanded, and the RO was instructed to request that the appellant provide any evidence in his possession pertaining to his claims on appeal. R. at 467-70. The RO was also to obtain records of the appellant's treatment at a VA medical center in Fulton, Pennsylvania, where the appellant reported he had been treated in the late 1980s. *Id.* Following the appellant's statement that he had no further evidence to submit (R. at 478), the RO again determined that the evidence of record did not sustain a disability rating for PTSD greater than 50% from 1947 until 1999 (R. at 493-500).

In October 2005, the Board affirmed the RO's denial of a disability rating exceeding 50% for the appellant's PTSD prior to January 1999. R. at 1-23. The Board stated that, although the appellant and his family members submitted lay statements regarding the severity of his service-connected PTSD, none of these individuals had the required medical expertise to opine competently

3

as to the severity of his condition. R. at 11. The Board then discussed the medical records in the appellant's claims file and concluded that, based on that "competent medical evidence," the assignment of a rating evaluation greater than 50% for the appellant's PTSD symptoms prior to January 1999 was not appropriate. R. at 12. This appeal followed.

## II. ANALYSIS

The issue presently before the Court is the parameters of the duty to assist where the Secretary revises a previously final decision. In his motion for reconsideration, or in the alternative, a panel decision, the appellant asserts that he is not relying merely on the passage of time to trigger the need for a new examination, but relies instead on his own statements in his May 18, 1999, TDIU claim that his PTSD condition worsened to the point that he was forced to quit his job in March 1986. Based upon this evidence of an increase in the severity of his condition, he contends that the Board erred by failing to consider a staged rating between 1986 and 1997. The appellant further argues that the duty to assist requires VA to obtain a retrospective medical evaluation between 1947 and 1997 to assess the level of his disability during those years. He asserts that *Hines v. Principi*, 18 Vet.App. 227 (2004), expanded the duty to assist by requiring VA to develop medical evidence through a retrospective medical evaluation in situations where there is a lack of medical evidence for the time period being rated.

Pursuant to the mandates of 38 U.S.C. § 5103A, the Secretary has a duty to assist claimants in developing and obtaining relevant evidence needed to substantiate their claims. The duty to assist requires the Secretary to "make reasonable efforts to obtain relevant records (including private records) that the claimant adequately identifies to the Secretary and authorizes the Secretary to obtain." 38 U.S.C. § 5103A(b)(1); 38 C.F.R. § 3.159(c)(3) (2007). Additionally, the Secretary must provide the claimant with a medical examination or a medical opinion when such an examination or opinion is necessary to make a decision on the claim. 38 U.S.C. § 5103A(d)(1). An examination or opinion is necessary to make a decision on a claim if the evidence of record

> (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and
> (B) indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; but

4

(C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim.

38 U.S.C. § 5103A(d)(2)(A)-(C). However, the Court has never directly addressed the parameters of the Secretary's duty to assist in determining the level of disability for purposes of awarding a rating after the Secretary has revised a decision denying service connection.

In *Hines*, 18 Vet.App. at 242, the Court stated that, if the Board determined on remand that CUE existed in a June 1976 RO decision denying service connection for hypothyroidisim, the Board or the RO should determine a proper rating for that condition from 1976 until 1996, when service connection was awarded. *Id.* The Court also commented that if the Board or RO engaged in such a determination, the possibility of staged ratings for that time period should be considered and VA should provide all appropriate assistance in developing evidence on that rating question. *Id.* The opinion did not explore whether appropriate assistance in developing evidence for consideration of a staged rating requires a retrospective medical evaluation, or under what factual situation such a medical examination or opinion might be warranted. However, under the facts of this case, we now have reason to address the scope of the duty to assist in the context of assigning a disability rating where the Secretary has revised a previously final decision denying service connection.

First, section 5103A makes clear that the Secretary must assist in gathering relevant records by seeking out all lay and medical evidence that currently exists. *See* 38 U.S.C. § 5103A(a)(1); 38 C.F.R. § 3.159(c)(4). Particularly, the Secretary must gather records of relevant medical treatment if the claimant furnishes information sufficient to locate these records. 38 U.S.C. § 5103A(c). In addition to seeking medical evidence, the Secretary must advise the appellant to submit lay evidence of observable symptoms experienced during the relevant periods. 38 C.F.R. § 3.159(b)(1). It is clear that while lay witnesses are not competent to offer expert medical testimony, such witnesses are fully competent to testify as to their firsthand observations of the appellant's visible symptoms. *See Washington v. Nicholson*, 21 Vet.App. 191, 195 (2007) (lay persons competent to provide information regarding visible, or otherwise observable symptoms of disability); *Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (lay testimony competent to establish presence of observable symptoms); *Doran v. Brown*, 6 Vet.App. 283, 288 (1994).

Second, after all the evidence is gathered, the Board must assess whether the claim can be rated based on the available evidence. *See Hart v. Mansfield*, 21 Vet.App. 505, 508 (2007); *see also*

5

*Mariano v. Principi*, 17 Vet.App. 305, 312 (2003). Lay testimony in this case reveals that the appellant reported a history of domestic violence and strained relationships with his family members. R. at 153, 262. The appellant also stated that he was forced to quit his job because of his "nerves" and that the "stresses and strains [of his condition] would actually make [him] physically ill." R. at 262. The appellant's sister also submitted a statement reporting that after the appellant returned home from service he was unable to sleep. R. at 132. She stated that any time the appellant would hear a train, he would run out of the house screaming. *Id.* She also stated that, even after the appellant was married, he was short-tempered and continued to struggle with his mental condition. R. at 132-33. The Court makes no determination as to the credibility of these statements. *See Dalton v. Nicholson*, 21 Vet.App. 23, 38 (2007) ("'The [Board] has the duty to assess the credibility and weight to be given to the evidence.'" (quoting *Wood v. Derwinski*, 1 Vet.App 190, 193 (1991))). However, to the degree that lay witnesses are competent to give testimony regarding the appellant's occupational and social impairment, the Board should assess and weigh the credibility of such statements contained in the record.

Third, if a disability rating cannot be awarded based on the available evidence, the Board must determine if a medical opinion is necessary to make a decision on the claim. *See* 38 U.S.C. § 5103A(d); *see also McLendon v. Nicholson,* 20 Vet.App. 79, 81-86 (2006); *Wells v. Principi*, 326 F.3d 1381, 1383-84 (Fed. Cir. 2003). To determine if a medical opinion or examination is necessary, the Board must consider whether there is competent medical or lay testimony that indicates that a higher disability rating may be appropriate, even though it was insufficient to grant such a rating in the second step. If the record raises a question as to whether the appellant's symptoms were caused by the service-connected condition or something else, then an etiology opinion may be required. *See Barr v. Nicholson*, 21 Vet.App. 303, 307 (2007) (laypersons are not competent to render medical opinions, including etiology opinions); *Grover v. West*, 12 Vet.App. 109, 112 (1999); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494-95 (1992). We hold that this may include obtaining a retrospective medical opinion.

In this case a retrospective medical opinion *may* be necessary and helpful, especially because of the absence of medical records between 1947 and 1997. For example, a medical expert is the only person competent to opine whether the appellant's observable symptoms are medically related to his current PTSD condition or some other condition if there is uncertainty. *See Espiritu*,

6

2 Vet.App. at 494-95. However, although the appellant suggested at oral argument that a retrospective medical opinion is required because a medical professional might be able to elicit information from the appellant and identify symptoms which the appellant did not associate with PTSD, this assertion is incorrect. As the Court has recognized in the past, the duty to provide a medical examination is not automatic. *See McLendon*, 20 Vet.App. at 81. Rather, it applies only once the evidence has met the minimal threshold of indicating the existence of a medical question. It does not require a "'fishing expedition'" to substantiate a completely unsupported claim. *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992); *see also* 38 U.S.C. § 5103A(a)(2) ("The Secretary is not required to provide assistance to a claimant under this section if no reasonable possibility exists that such assistance would aid in substantiating the claim."). Of course, if an examination is required, then the medical professional should seek all relevant information from the appellant. *Barr*, 21 Vet.App. at 311(stating that an adequate medical opinion should be based upon consideration of the veteran's prior medical history and examinations). Nonetheless, the Court need not decide at this point whether the duty to assist requires an examination in this case.

Also, if there is evidence indicating that the appellant's condition worsened beyond the assigned 50% disability rating between 1947 and 1997, consideration of a staged rating may be necessary. *Fenderson v. West*, 12 Vet.App. 119, 126 (1999). There is at least some indication in the record that the appellant's condition may have worsened in 1986 when he left his job (R. at 262), but there is also evidence to suggest the appellant simply retired in 1986 (R. at 153, 218). Again, the Court makes no finding as to the credibility of these statements. Rather, the Board should assess all the evidence and determine if a staged rating is appropriate. In doing so, the Board is reminded that a medical opinion may not be needed to validate lay testimony of observable symptoms. *See Doran, Layno,* and *Washington,* all *supra*.

Finally, the Court recognizes that the evidence must be at least in equipoise to award a benefit, including a particular rating. *See Ortiz v. Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001); *Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990). If the level of the appellant's disability between 1947 and 1997 cannot be determined without resorting to speculation, then it has not been proven to the level of equipoise and a staged rating is not appropriate. *See* 38 C.F.R. § 3.102 (2007) (Board may not award benefits when the award would be based upon pure speculation). To the extent that the rating code is based on symptoms capable of lay observation, the Board is qualified to assess the

credibility and weight to be given to evidence describing those symptoms. *See Wood*, 1 Vet.App. at 193. However, the Board must rely on independent medical evidence, and not its own judgment, when the rating criteria involve a medical assessment. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) (concluding Board may consider only independent medical evidence to support findings and may not rely on its own medical judgment).

In summary, the Secretary must first solicit appropriate medical and lay evidence from the appellant. Next, the Secretary must determine if an appropriate rating can be granted based on the evidence of record. If not, but there is evidence that indicates that a higher rating or ratings *may* be warranted, then the Secretary should obtain an appropriate medical opinion, which may include, in this case, a retrospective opinion as to the appellant's level of disability between 1947 and 1997. However, if evidence of the level of the appellant's disability between 1947 and 1997 cannot be obtained without resorting to speculation, then the evidence is not in equipoise and the benefit of the doubt rule would not apply. *See Ortiz* and *Gilbert,* both *supra*; 38 C.F.R. § 3.102.

In this case, the appellant relies only on *Hines,* 18 Vet.App. at 242, to support his argument that the Secretary failed to satisfy his duty to assist in developing the medical evidence. The Court is not persuaded that the Board clearly erred in finding that all the evidence regarding the appellant's claim has been obtained and developed. Nonetheless, the Board failed to consider the lay evidence of record regarding the appellant's observable PTSD symptoms. Accordingly, the Court remands this matter so the Board can weigh and assess the probative value of the lay testimony and reconsider its decision in light of this new opinion. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board decision vacated where it contained no analysis of credibility or probative value of lay testimony, nor a statement of reasons or bases for implicit rejection of that evidence).

## III. CONCLUSION

Based upon the foregoing, the October 7, 2005, decision of the Board is VACATED and this matter is REMANDED for adjudication consistent with this opinion.