Citation Nr: 1546210 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 13-05 863 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating higher than 10 percent for an acquired psychiatric disorder, rated 10 percent disabling from November 14, 1967, to October 19, 1987.

2. Entitlement to an effective date earlier than October 19, 1987, for eligibility for Dependents' Educational Assistance (DEA) under 38 U.S.C.A. Chapter 35.

3. Whether there is clear and unmistakable error (CUE) in a July 1978 rating decision, as revised in November 2012, which assigned a 10 percent rating for depressive neurosis effective December 30, 1975.

4. Whether there is CUE in a September 1993 rating decision that assigned an effective date of October 19, 1987, for the award of service connection for posttraumatic stress disorder (PTSD) and the assignment of a 30 percent rating (that was subsequently increased to 100 percent).




REPRESENTATION

Veteran represented by: Peter J. Sebekos, Attorney at Law


WITNESSES AT HEARINGS ON APPEAL

Veteran and the Veteran's Spouse


ATTORNEY FOR THE BOARD

J. Hager, Counsel


INTRODUCTION

The Veteran had active service from September 1965 to November 1967.

This case initially came before the Board of Veterans' Appeals (Board) on appeal from March 2012, November 2012, and September 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York. Jurisdiction over this case was subsequently transferred to the VARO in Atlanta, Georgia.

The Veteran testified at a hearing before a Decision Review Officer (DRO) at the Buffalo RO in September 2012 and at a Board hearing before the undersigned in October 2014. Transcripts of both hearings have been associated with the claims file.

This case has a complex procedural history, which was discussed in detail in the Board's most recent adjudication of this case in February 2015 and is outlined herein. In that decision, the Board granted a motion alleging CUE in a July 1977 rating decision that assigned an effective date of December 30, 1975, for the award of service connection for depressive neurosis. The RO implemented the Board's decision in a March 2015 rating decision in which it assigned an effective date of November 14, 1967, for the award of service connection for depressive neurosis and assigned a 10 percent rating from that date. That disability has been recharacterized as an acquired psychiatric disorder for the reasons indicated below.

In that same March 2015 rating decision, the RO found that basic eligibility for DEA was established from October 19, 1987. The Veteran timely appealed the assignment of an initial 10 percent rating for depressive neurosis from November 14, 1967, and the assignment of an October 19, 1987, effective date for eligibility for DEA. The RO issued a May 2015 Statement of the Case and the Veteran filed a timely Substantive appeal (VA Form 9) as to these issues in June 2015. The RO certified the issues to the Board in June 2015. As such, these matters are currently before the Board.

Also before the Board are motions alleging CUE in July 1978 and September 1993 rating decisions. The Board remanded these matters as inextricably intertwined with the implementation of the with the RO's initial rating for depressive neurosis from November 14, 1967. These CUE motions now back before the Board on this appeal. The detailed procedural history relating to each of these matters will be discussed below.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The evidence is at least in relative equipoise as to whether, from November 14, 1967, to October 19, 1987, the Veteran's psychiatric disability picture most nearly approximated a demonstrable inability to obtain or retain employment.

2. The Veteran has had total disability that is permanent in nature resulting from a service-connected disability since November 14, 1967.

3. In light of the favorable decision as to the claim for an initial rating higher than 10 percent for an acquired psychiatric disorder from November 14, 1967, to October 19, 1987, the relief sought in the motions alleging CUE in: (1) a July 1978 rating decision, as revised in November 2012, which assigned a 10 percent rating for depressive neurosis effective December 30, 1975; and (2) a September 1993 rating decision that assigned an effective date of October 19, 1987, for the award of service connection for PTSD and assigned a 30 percent rating (that was subsequently increased to 100 percent), has already been granted.


CONCLUSIONS OF LAW

1. Resolving all reasonable doubt in favor of the Veteran, the criteria for an initial rating of 100 percent for an acquired psychiatric disorder from November 14, 1967, to October 19, 1987, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.132, Diagnostic Code (DC) 9405 (1967-1987). 

2. The criteria for an effective date of November 14, 1967, for eligibility for DEA under 38 U.S.C.A. Chapter 35, have been met.

3. The motions alleging CUE in the July 1978 and September 1993 rating decisions are moot. 38 U.S.C.A. §§ 7104, 7105(d)(5) (West 2014); 38 C.F.R. §§ 19.4, 20.101 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Procedural History

In order to address the matters on appeal, it is first necessary to summarize the procedural history of this complex case. 

The RO initially denied the Veteran's claims for service connection for a psychological disorder in February 1968, October 1969, and January 1970 because he failed to report for a VA examination. Subsequently, in response to a December 1975 application to reopen the claim for service connection for a psychiatric disorder, the RO in July 1977 granted service connection for depressive neurosis and assigned a noncompensable rating effective December 30, 1975, the date of the application to reopen. In its February 2015 decision, however, the Board found CUE in this assigned effective date and reversed and revised this decision to reflect an effective date for the grant of service connection for depressive neurosis of November 14, 1967, the day following separation from service. This change has the same effect as if it had been made on the date of the prior July 1977 decision. 38 U.S.C.A. § 5109A (West 2014); 38 C.F.R. § 3.105(a) (2014).

Thereafter, in a July 1978 rating decision, the RO awarded a higher, 10 percent rating for the Veteran's service-connected depressive neurosis, effective January 19, 1978. Significantly, however, in a subsequent November 2012 rating decision, the RO determined that there was CUE in the July 1978 rating decision, which was revised to allow for an earlier effective date for the award of a 10 percent rating for depressive neurosis dating back to the then-effective date of the grant of service connection, December 30, 1975. Specifically, the RO found that new and material evidence in the form of a May 1978 VA examination report had been submitted within one year of the prior July 1977 rating decision and that the receipt of such new and material evidence rendered the July 1977 rating decision non-final with respect to the disability rating assigned. The change made in November 2012 on the basis of CUE also has the same effect as if it had been made on the date of the prior July 1978 rating decision.

As a result of the above two CUE findings, the Veteran is currently in receipt of a 10 percent rating for PTSD (formerly depressive neurosis, then dysthymic disorder) from November 14, 1967 (the day after separation from service) to October 18, 1987, and a 100 percent rating from October 19, 1987, forward. 

On October 19, 1987, the Veteran filed a claim for service connection for PTSD. The statements he submitted in support of his claim in January 1988 were also interpreted as a claim for an increased rating for his service-connected depressive neurosis. See September 1988 rating decision (denying service connection for PTSD and also denying an increased rating for depressive neurosis). The Veteran filed a timely NOD with the September 1988 rating decision, and a lengthy appeal ensued. In a February 1993 decision, the Board granted service connection for PTSD. The RO implemented this grant of service connection in a September 1993 rating decision assigning an initial 30 percent rating for PTSD, effective October 19, 1987. In doing so, the RO noted that the Veteran's service-connected dysthymic disorder was rated as a single entity with the newly established PTSD, and as such, revised the name of his psychological condition to "PTSD (formerly diagnosed as dysthymic disorder)." It is evident from the explanation in the September 1993 rating decision that the RO was re-characterizing the Veteran's service-connected disability because depressive neurosis and PTSD are both psychoneuroses that are evaluated under the same rating criteria.

The Veteran disagreed with the 30 percent rating assigned in the September 1993 rating decision, and an appeal ensued until the Board granted a 100 percent rating in a January 1999 decision. The RO implemented this decision in a February 1999 decision and assigned an effective date of October 19, 1987. The Veteran filed a timely April 1999 Notice of Disagreement with (1) the effective date assigned for the award of service connection for PTSD and (2) the effective date assigned for the 100 percent rating for PTSD. Although the Veteran perfected his appeal in May 2001, he then submitted a signed withdrawal of his appeal for an earlier effective date for the assignment of a 100 percent rating for PTSD in June 2001. Thereafter, the Veteran claimed that the withdrawal was a falsehood and argued for many years that the issue was still on appeal. However, in May 2006, the Board issued a decision finding that the Veteran effectively withdrew his appeal and dismissed the claim for entitlement to an effective date earlier than October 19, 1987, for the assignment of a 100 percent evaluation for PTSD. This decision was affirmed by the U.S. Court of Appeals for Veterans Claims (Court) in May 2008.

Turning to the Veteran's claim for entitlement to an earlier effective date for the award of service connection for PTSD, this claim was also ultimately dismissed. Although a February 2009 Board decision initially incorrectly referred a claim to reopen the issue of entitlement to an earlier effective date for PTSD, such referral was determined to be precluded by law in a November 2011 Board decision, which was affirmed in relevant part by the Court in an April 2013 decision.

With respect to depressive neurosis, the Board notes that the Veteran's January 1988 claim and appeal for an increased rating for depressive neurosis was remanded by the Board in February 1993; however, this issue was not separately adjudicated from the rating assigned for the Veteran's newly service-connected PTSD. Rather, consistent with the February 1993 Board remand, the Veteran's newly-granted PTSD symptoms were considered in assigning his psychological disability rating. As the Veteran is in receipt of a 100 percent rating for his PTSD, effective October 19, 1987, this constituted a full grant of benefits with regard to any claim for an increased rating for a psychiatric disorder from this date. In this regard, the Board notes that, in Amberman v. Shinseki, the Federal Circuit recognized that separately diagnosed psychiatric conditions could be service connected but could not be separately rated unless they resulted in different manifestations. 570 F.3d 1377, 1381 (Fed. Cir. 2009) ("Section 4.14 clearly contemplates that several separately diagnosed disorders may have a single manifestation, and it clearly prohibits the VA from rating that manifestation for each disorder"). Here, the September 1993 rating decision stated that the Veteran's dysthymic disorder, previously diagnosed as depressive neurosis, was to be "rated as a single entity with the newly established [PTSD" because "[b]oth of these conditions are anxiety disorders." Additionally, a subsequent November 2011 Board decision, affirmed in relevant part by the Court, further determined that "[t]here were no records showing treatment for any psychiatric problems during the one year period prior to the date of receipt of his claim [for PTSD] in October 1987." As such, the record reflects that the Veteran's depressive neurosis symptomatology is contemplated by the 100 percent disability rating assigned for the Veteran's service-connected PTSD, effective October 19, 1987.

Initial Rating Higher than 10 percent for an Acquired Psychiatric Disorder

During the relevant time period from November 14, 1967 to October 19, 1987, the diagnostic code applicable to the Veteran's depressive neurosis was 38 C.F.R. § 4.132, DC 9205, which evaluates depressive reaction. All psychoneurotic disorders, however, were rated under the General Rating Formula for Psychoneurotic Disorders.

Under this general rating formula, a 10 percent rating was warranted for symptoms less than those in the criteria for a 30 percent rating, with emotional tension or other evidence of anxiety productive of moderate social and industrial impairment. A 30 percent rating was assigned when there was definite impairment in the ability to establish or maintain effective and wholesome relationships with people, and when the psychoneurotic symptoms resulted in such reduction in initiative, flexibility, efficiency, and reliability levels as to produce definite industrial impairment. A 50 percent rating was assigned when the ability to establish or maintain effective or favorable relationships with people was considerably impaired, and when by reason of psychoneurotic symptoms, the reliability, flexibility, and efficiency levels were so reduced as to result in considerable industrial impairment. A 70 percent rating was assigned when the ability to establish or maintain effective or favorable relationships with people was severely impaired, and when the psychoneurotic symptoms were of such severity and persistence that there was severe impairment in the ability to obtain or retain employment.

In addition, there were three separate criteria for a 100 percent rating. Such a rating was assigned either: (1) when the attitudes of all contacts except the most intimate were so adversely affected as to result in virtual isolation in the community; (2) there were totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic, and explosions of aggressive energy resulting in profound retreat from mature behavior; or (3) the Veteran was demonstrably unable to obtain or retain employment. See 38 C.F.R. § 4.132 (1967); 38 C.F.R. § 4.132 (1987). The Court held that if any one of these three independent criteria were met, to include a demonstrable inability to obtain or retain employment, a 100 schedular evaluation was required. Johnson v. Brown, 7 Vet. App. 95, 99 (1994). Although the Court in Johnson was specifically discussing PTSD, which was added to the general rating formula in 1980, PTSD was listed along with depressive reaction in the psychoneurotic disorders and was rated under the identical general rating formula. The reasoning of Johnson thus applies regardless of the characterization of the Veteran's acquired psychiatric disorder.

As noted above, the Veteran's attorney contends that a review of all of the evidence of record reflects that the Veteran's psychiatric symptoms between 1967 and 1987 most nearly approximated serious impairment in the ability to establish or maintain effective or favorable relationships with people, with reliability, flexibility, and efficiency levels that were so reduced by reason of psychoneurotic symptoms as to result in pronounced industrial impairment, thereby warranting an initial 70 percent rating. See June 2015 Substantive Appeal, at 14; September 2015 Argument of Appellant on Appealed Claim, at 18. He also contends that the Veteran is entitled to a total disability rating based on individual unemployability (TDIU) for this time period because his acquired psychiatric disorder prevented him from obtaining or retaining employment. The Board is not, however, limited to considering and granting the particular relief sought by the Veteran, but must also consider all theories of entitlement raised by the evidence of record and must generally presume that the Veteran is seeking the maximum possible rating. See Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (in direct appeals, all filings must be read in a liberal manner); AB v. Brown, 6 Vet. App. 35, 39 (1993) (a veteran is presumed to be seeking the maximum possible rating unless he indicates otherwise).

For the following reasons, the Board finds that the Veteran's symptoms most nearly approximated the criteria for a 100 percent rating for psychoneurotic disorders from November 14, 1967, to October 18, 1967. As noted by the Veteran's attorney, although the initial 10 percent rating is in effect from November 14, 1967, to October 18, 1967, the Board must consider the evidence dated prior to and after this period in considering the appropriate rating because its decision must be based on a complete medical history of the Veteran's disability. Schafrath, 1 Vet. App. at 594. 

The service records reflect that the Veteran accidentally shot and killed a friend in February 1966. A July 1967 Medical Evaluation Board report reflects that the Veteran had been referred for psychiatric evaluation after reporting severe depression and lethargy and was on the verge of becoming actively suicidal. He was preoccupied with suicidal feelings due to the shooting incident. The psychiatrist who first interviewed him found him so tense he could hardly speak and noted that attempts to treat him were unsuccessful. The diagnoses were emotionally unstable character disorder and depressive reaction in remission. In August 1967, a Physical Evaluation Board recommended that the Veteran be found unfit to perform his duties based on the diagnosis of emotionally unstable character disorder, and a September 1967 Physical Review Council added that the Veteran be found unfit to perform his duties because of the physical disability of neurotic depressive reaction, noting that the disability was incurred in service and was not due to misconduct, and that the disability was ratable at 10 percent.

The first post service medical record was a July 1977 VA-authorized psychiatric evaluation conducted at a correctional facility where the Veteran was incarcerated. As noted by the Veteran's attorney, there is no indication that the physician who conducted this examination reviewed the claims file, as he wrote that the Veteran "served in the United States Navy allegedly from September 1965 to November 1967 and he claims that he obtained an Honorable Discharge." The physician diagnosed only anti-social personality and drug dependence (heroin), and cited only to the in-service Medical Board report diagnoses of nervous condition, emotionally unstable character disorder, and depressive reaction in remission, not the neurotic depressive reaction. The physician concluded, "[i]n essence this Veteran's history indicates that he has been raised in a less than satisfactory family situation without a father figure," and "[h]e had become early in life a disciplinary problem and had failed to develop an adequate superego." Similarly, the psychiatrist who conducted the May 1978 VA examination indicated that he did not review the claims file and diagnosed depressive neurosis, personality disorder, and drug dependency. Neither of the physicians explained the reasons for their conclusions that the Veteran suffered from a personality disorder and, combined with their lack of claims file review, this warrants the conclusion that their opinions on this question are entitled to little, if any, probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed).

As noted by the Veteran's attorney, the subsequent lay and medical evidence reflects that most, if not all, of the Veteran's psychiatric symptoms were related to his service connected acquired psychiatric disorder rather than a personality disorder. A June 1988 Social Survey report shows that the Veteran reported that he suffered from flashbacks, excessive anger, rage, distrust, sleep disorder, and feelings of hopelessness. He also complained of having flashbacks and difficulty relating to people. The examiner indicated that, initially, the Veteran was very hostile and uncooperative and that, as a result, he had to be interviewed twice. An August 1988 VA mental hygiene examination reflects that the Veteran reported that he had recurrent nightmares and flashbacks of stressors related to his experiences in Vietnam. He complained of suffering from anger, rage, distrust and feelings of hopelessness. In addition, he stated that, as a result of his psychiatric disability, he was able to sleep for only approximately two to four hours per night. The psychiatrist indicated that the Veteran had poor concentration. He further reported that he had intrusive thoughts, was hyperalert, distrusted others, and isolated himself socially. The examiner also reported that the Veteran was hostile, and noted his history of drug use. In addition, the examiner commented that the veteran was 'hypersensitive' about his skin disorder, vitiligo. It was the opinion of the psychiatrist that the veteran's social and industrial adaptation was very poor. The diagnosis was chronic PTSD.

An April 1991 hospitalization record reflects that the Veteran made a suicide gesture. 

A January 1992 VA examination report reflects that the Veteran complained that he was depressed and cried "all the time," felt that "life was not worth living," and had recurrent flashbacks nightmares of his experiences in Vietnam. He also referred to his malignancy and to the discoloration of his skin; with respect to the latter disorder, the examiner reported that the Veteran maintained that it "made him feel like he had AIDS." In addition, the Veteran said that, as a result, people would not employ him. The physician indicated that the Veteran became tearful and cried while discussing his Vietnam stressors, particularly the accidental shooting of a friend. He also reported that the Veteran made vague suicidal ideations, and expressed feelings of hopelessness. The examiner diagnosed the Veteran with a dysthymic disorder, which he opined was a more appropriate diagnosis than PTSD.

The March 1993 VA examination report reflects that the Veteran complained that he was severely depressed about his vitiligo. He reported, and his wife confirmed, that he suffered from nightmares every night, and that as a result, he had a severe sleep disorder. The examination revealed that the Veteran had anger and deranged feelings, although he denied any homicidal or suicidal ideation. The diagnoses were PTSD and dysthymic disorder.

From 1995 to 1997, the Veteran was hospitalized to treat his PTSD on at least six occasions, generally for several weeks at a time. 

On the July 1996 VA psychiatric examination, the Veteran reported that he suffered from flashbacks, nightmares, and intrusive thoughts concerning his Vietnam experiences. He also indicated that he had survivor guilt. In addition, the Veteran complained that he had sleep disorder due to his PTSD, and that he had a "hyperalert reaction" to the activities of the recent Independence Day celebrations. The psychiatrist stated that he had reviewed the Veteran's claims folder, and commented that the Veteran exhibited very poor "social and industrial adaptation." He further reported that the Veteran was making only a marginal adjustment in his community. Significantly, the examiner indicated that the Veteran was unemployable due to his PTSD. He opined that the Veteran's Global Assessment of Functioning GAF) score was 50. The diagnosis was chronic, delayed PTSD.

In an addendum to the July 1996 psychiatric examination report, dated the following month, the same examiner wrote, "[t]he patient is showing severe total social and industrial inability to adapt due to post-traumatic stress disorder symptoms. I am going to highlight the symptoms from the previous report. He never had a steady job. None of his jobs lasted more than one year. He has difficulty relating to people. He has difficulty facing authoritarian figures. He had flashbacks of PTSD. The patient wants to isolate himself. He shows very poor social and industrial adaptation." The psychiatrist further opined that the Veteran had a GAF score of 50, and that his PTSD symptomatology impaired his employability. He then reiterated his conclusion that the Veteran was unemployable due to his PTSD.

In an October 1996 statement, the Veteran reported that he had been employed from November 27, 1995, to February 8, 1996, on a part-time basis by the Salvation Army. In a statement submitted in response to VA inquiry, the Salvation Army confirmed that it had briefly employed the Veteran on a part-time basis.

On the January 1998 VA examination, the Veteran reiterated his history of psychiatric trauma relating to his experiences in Vietnam. He complained that he suffered from recurrent nightmares, flashbacks and recurrent thoughts, as well as poor concentration. The examination revealed that the Veteran's mood was very depressed; however, he denied having any current suicidal or homicidal ideation. The diagnosis was chronic PTSD.

In addition to the medical evidence of record, in written statements and hearing testimony, the Veteran has indicated that he did not have the pre-service problems indicated explicitly by the May 1977 VA-authorized examiner and implicitly by the May 1978 VA-authorized examiner, and that he had severe psychiatric symptoms since service that prevented him from obtaining or retaining employment. During the October 2014 Board hearing, the Veteran indicated that prior to going to Vietnam, with regard to himself, his mother, step father, and siblings, "[e]verybody went to school. Everybody had a fairly good life. There was no problems." See October 2014 Board Hearing Tr. at 7-8. In addition, although the Veteran was granted a total rating for pension purposes in 1978 due to his skin cancer, he indicated during an April 1997 Board hearing that he attributed his unemployability to his psychiatric and physical disabilities. He stated that he worked in the computer center of Manufacturers Hanover trust, "[b]ut coming from Vietnam, it just did not work and that was the beginning of the decline. I went from there to the Post Office to Time Life Magazine and I steadily went downhill, just couldn't cope with the world after coming back from Vietnam based on the things that happened to me over there." See April 1979 Board Hearing Tr. at 8-9.

The Board finds the statements of the Veteran in this regard to be competent, credible, and consistent with the evidence of record. Given that the May 1977 and May 1978 examiners' findings of a personality disorder and attribution of some of the Veteran's psychiatric symptoms to such disorder were not supported by a rationale and were of little probative weight, the Board accepts the argument of the Veteran's attorney that the evidence reflects a lack of a personality disorder and that the symptoms of the Veteran's acquired psychiatric disorder were therefore more severe than indicated by those examiners. Moreover, the psychiatrist who conducted the July 1978 VA examination indicated that the Veteran was unemployed and there is little other medical evidence as to the severity of the Veteran's psychiatric symptoms during this time period. The later medical evidence supports the Veteran's lay testimony as to the severity of his symptoms and their effect on his employability during this time period. For example, in finding the Veteran unemployable, the July 1996 VA examiner not only opined as to the Veteran's current unemployability, but noted from his review of the evidence that the Veteran had never had a steady job or one that lasted more than one year, and based his conclusion on this long term demonstrable inability to obtain or retain employment. This supports the Board's conclusion that the symptoms of the Veteran's acquired psychiatric disorder from 1967 to 1987 most nearly approximated a demonstrable inability to obtain and retain employment.

In addition, although the Veteran's attorney argued for a 70 percent rating and a TDIU from the November 14, 1967, effective date for service connection for an acquired psychiatric disorder, as noted above if any one of the three independent criteria contained in the criteria for a 100 percent rating under the general rating formula for psychoneurotic disorders are met, to include a demonstrable inability to obtain or retain employment, a 100 schedular rating is required under that code. Johnson, 7 Vet. App. at 99. Thus, the Veteran's inability to obtain or retain employment from November 14, 1967, to October 19, 1987, would warrant a 100 percent rating under the general rating formula.

For the foregoing reasons, the evidence is at least evenly balanced as to whether the symptoms of the Veteran's acquired psychiatric disorder more nearly approximated the criteria for a 100 percent rating under 38 C.F.R. § 4.132, DC 9405, from November 14, 1967 to October 19, 1987. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to a 100 percent rating for an acquired psychiatric disorder from November 14, 1967, to October 19, 1987 is warranted.

As the Board has granted a 100 percent schedular rating for the entire appeal period, consideration of an extra-schedular rating is not required. Cf. Colayong v. West, 12 Vet. App. 524, 537 (1999) ("Hence, on remand the Board is required to address an extraschedular rating for the veteran's service-connected Pott's disease if it is not rated 100 percent as a schedular matter") (emphasis added). Similarly, as the Board has granted the maximum schedular rating from the earliest possible effective date, discussion of the duties to notify and assist under the Veterans Claims Assistance Act of 2000 is unnecessary.

Finally, as noted above, the Veteran's attorney contended that the Veteran was entitled to TDIU from November 14, 1967. The issue of entitlement to TDIU is raised when the Veteran seeks the highest rating possible for a disability and submits evidence of unemployability due to that disability. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). Here, however, the Board has granted a 100 percent rating for the disability for which the Veteran sought a higher initial rating from the day after separation from service. Moreover, the Veteran is in receipt of special monthly compensation (SMC) under 38 U.S.C.A. § 1114(s) from May 18, 1988, as of which he was receiving an 80 percent rating for vitiligo in addition to the 100 percent rating for his acquired psychiatric disorder. See 38 U.S.C.A. § 1114(s) (providing for SMC where the Veteran has service-connected disability rated as total and has additional service connected disability or disabilities independently ratable at 60 percent or more). While the Veteran is not receiving SMC prior to May 18, 1988, and there are some circumstances in which a 100 percent rating does not render the issue of entitlement to a TDIU moot, that is not the situation here. This is because, in this case, the 100 percent rating was granted for the disability for which the Veteran sought a higher rating, and the grant of TDIU would not result in SMC at the (s) level when combined with his service connected residuals of lymphadenectomy, rated 30 percent from July 1, 1978, and residuals of malignant melanoma, left foot, rated as 20 percent disabling from January 19, 1978. Cf. Bradley v. Peake, 22 Vet. App. 280, 293-94 (2008) (holding that 100 percent rating does not render a TDIU claim moot where there is a possibility of SMC based on 100 percent rating with a separate 60 percent rating based on a different disability). The issue of entitlement to a TDIU is therefore moot.

Effective Date for Entitlement to DEA Benefits

DEA benefits under 38 U.S.C.A. Chapter 35 may be paid to dependents of a veteran who has a service-connected disability that is rated permanent and total. 38 U.S.C.A. §§ 3500, 3501; 38 C.F.R. § 3.807(a), 21.3021. A total disability rating may be assigned where a veteran's service-connected disability or disabilities are rated 100 percent disabling under the rating schedule, or if the veteran is unemployable due to service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341. The law provides that effective dates relating to awards under Chapter 35 shall, to the extent feasible, correspond to effective dates relating to awards of disability compensation. 38 U.S.C.A. § 5113(a).

As the Board has granted a 100 percent schedular rating for the Veteran's acquired psychiatric disorder from November 14, 1967, the Veteran therefore had a disability rated permanent and total from that date. As such, an effective date of November 14, 1967, for DEA benefits is warranted.

CUE Motions

Beginning in November 2009, the Veteran has advanced multiple arguments alleging CUE in three rating decisions, including the RO's: (1) July 1977 rating decision assigning December 30, 1975, as to the effective date assigned for the grant of service connection for depressive neurosis; (2) July 1978 rating decision (as revised in November 2012), assigning a rating of 10 percent for depressive neurosis, effective December 30, 1975; and (3) September 1993 rating decision assigning an effective date of October 19, 1987, for the grant of service connection for PTSD and assigning a 100 percent disability rating. 

There were three theories advanced with regard to the 1977 decision, one with regard to the 1978 decision, and two with regard to the 1993 decision. See Andre v. Principi, 301 F.3d 1354, 1361 (Fed. Cir. 2002); Jarrell v. Nicholson, 20 Vet. App. 326, 332-33 (2006) (holding that each wholly distinct and different theory of CUE underlying a request for revision is a separate matter). 

As noted above, in February 2015, the Board found CUE in the RO's July 1977 rating decision assigning December 30, 1975, as the effective date for the grant of service connection for depressive neurosis, and assigned the earliest possible effective date of November 14, 1967, the day after separation from service. See 38 U.S.C.A. § 3010(b)(1) (West 1970); 38 C.F.R. § 3.400(b)(2)(i) (1975). As that decision constituted a full grant of the benefit sought, that CUE motion and all theories advanced in support of it are no longer before the Board. As explained by the Board in the February 2015 decision and remand, the only remaining specifically-pled theories of CUE that were not the subject of the Board's November 2011 decision, and therefore are currently before the Board, are as outlined below. 

First, the Veteran asserts that there was CUE in the July 1978 rating decision regarding the assignment of only a 10 percent rating, which was revised on the basis of CUE in November 2012 and made effective from the date he was awarded service connection-December 30, 1975. See September 2010, October 2010 statement (claiming the military records alone substantiated a 50 percent rating); the Veteran's April 2012 statement (alleging that his depressive neurosis was not in remission); and September 2012 Decision Review Officer Hearing Tr. (stating that "a 10% rating...is way off because [of] the diagnosis of personality disorder"). Specifically, the Veteran contends that the July 1978 rating decision, as revised in November 2013, which assigned a 10 percent rating for depressive neurosis, effective December 30, 1975, contains CUE because the RO failed to properly apply the extant law and regulations pertaining to rating psychoneurotic disorders, and that the rating should therefore be higher. 

Second, the Veteran asserts that there was CUE in the September 1993 rating decision regarding the assignment of an October 19, 1987, effective date for the award of service connection for PTSD and subsequent assignment of a 100 percent rating because the RO should have recognized that the Veteran's claim for an increased rating for depressive neurosis remained open and pending since December 30, 1975, as a result of the fact that new and material evidence was submitted within one year of the July 1977 rating decision and the fact that the Veteran was never given proper 38 C.F.R. § 3.103 notice of the award of the 10 percent disability rating assigned by the July 1978 rating decision. See Veteran's September 2012 statement; September 2012 Decision Review Officer Hearing Tr. (attorney alleging that the Veteran was not provided with the rating decision but only the award letters); October 2014 Board Hearing Tr. at 32 (alleging that he was only advised that he was awarded pension, which was the greater benefit); February 2013 statement (stating that, because of the pending claim, there was error in assigning the October 19, 1987, date for the 100 percent rating rather than a higher initial disability rating effective December 30, 1975). In other words, the Veteran contends that the September 1993 rating decision assigning an effective date of October 19, 1987, for the award of PTSD and subsequent assignment of a 100 percent rating contains CUE because new and material evidence was received within a year of the July 1977 rating decision and the Veteran was not properly notified of the readjudication of this claim in July 1978, resulting in the initial claim for a higher initial rating remaining pending. 

Third, the Veteran asserts that there was CUE in the September 1993 rating decision regarding the assignment of an October 19, 1987, effective date for the award of service connection for PTSD because his PTSD first started in service. See September 2012 Decision Review Officer Hearing Tr. (indicating that the diagnosis of personality disorder was incorrect); October 2014 Board Hearing Tr. at 30 (suggesting that PTSD was not a known diagnosis in the medical community when the Veteran filed his early claims).

The Board notes that, in order to revise a final VA decision based on CUE, the following must be demonstrated: (1) either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be "undebatable" and the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made;" and (3) a determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question." Morris v. Shinseki, 678 F.3d 1346 (Fed. Cir. 2012).

Significantly, in the June 2015 Substantive Appeal and September 2015 argument of appellant in appealed case, the Veteran's attorney indicated that the ultimate goal of and relief sought via these CUE motions was to allow VA to: (1) consider service connection for PTSD to have been in effect from November 1, 1967, and (2) recognize that the Veteran's PTSD symptoms were erroneously attributed to a personality disorder in the medical evidence and rating decisions dated prior to September 1993, thus requiring consideration of the medical evidence subsequent to that date in determining the appropriate rating for the Veteran's service connected psychiatric disorder from November 14, 1967. 

As indicated in the discussion above, the relief sought by the Veteran in advancing these CUE theories via the two CUE motions listed on the title page has herein been granted in full by the Board's decision on the claim for an initial rating higher than 10 percent for an acquired psychiatric disorder. In this regard, the Board has recharacterized the issue on appeal as entitlement to an initial rating higher than 10 percent for an acquired psychiatric disorder to reflect that it is considering all of the symptoms of the Veteran's depressive neurosis and PTSD, to include those that may have previously been attributed to a personality disorder, consistent with the arguments of the Veteran's attorney and with general service connection principles. See Mittleider v. West, 11 Vet. App. 181, 182 (1998) (citing 61 Fed. Reg. 52698 (Oct. 8, 1996) (when it is not possible to separate the effects of the service-connected and non-service-connected disabilities, the benefit of the doubt doctrine described in 38 C.F.R. § 3.102 dictates that such signs and symptoms be attributed to the service-connected disability or disabilities). Moreover, the Board is required to consider the complete medical history of the Veteran's disability in determining the appropriate rating, see Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991) and consideration of subsequently created medical evidence in assessing the Veteran's medical condition prior to its creation has been found appropriate by the Court in some circumstances. See Chotta v. Peake, 22 Vet.App. 80, 85 (2008) (requiring VA to obtain a retrospective medical examination with regard to the nature or level of disability in the past in accordance with its duty to assist "once the evidence has met the minimal threshold of indicating the existence of a medical question). As such, insofar as the Board is herein granting a 100 percent rating for the Veteran's depressive neurosis from the earliest possible effective date (the day after separation from service), the Board is granting in full the benefit that is being sought in the CUE motions. The Board therefore finds these CUE motions to be moot, as there remains no case or controversy regarding these issues, and they are dismissed. See 38 U.S.C.A. § 7105; see also Baughman v. Derwinski, 1 Vet. App. 563, 566 (1991). 


ORDER

Entitlement to a 100 percent rating for an acquired psychiatric disorder from November 14, 1967, to October 19, 1987, is granted, subject to controlling regulations governing the payment of monetary awards.

An effective date of November 16, 1967, for eligibility for DEA benefits under 38 U.S.C.A. Chapter 35 is granted, subject to controlling regulations governing the payment of monetary awards.

The motion alleging CUE in a July 1978 rating decision, as revised in November 2012, which assigned a 10 percent rating for depressive neurosis effective December 30, 1975, is dismissed as moot.

The motion alleging CUE in a September 1993 rating decision that assigned an effective date of October 19, 1987, for the award of service connection for PTSD and the assignment of a 30 percent rating (that was subsequently increased to 100 percent), is dismissed as moot.



____________________________________________
NICOLE KLASSEN
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs