http://www.va.gov/vetapp16/Files4/1634341.txt

Citation Nr: 1634341 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 09-08 630 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) prior to November 15, 2010.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) from November 15, 2010, forward.

REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

P. Lopez, Associate Counsel

INTRODUCTION

The Veteran served on active duty from October 1966 to October 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a October 2008 and August 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. The October 2008 rating decision denied service connection for hypertension. The August 2009 rating decision denied entitlement to a TDIU. The Board previously considered these issues in June 2012, when it remanded them for additional development.

The Veteran testified before the undersigned Veterans Law Judge (VLJ) at a video conference hearing held in June 2011. The hearing focused on the issue of entitlement to a TDIU. A transcript of that hearing is of record.

The claims file is now entirely contained in VA's secure electronic processing systems, Virtual VA and Veterans Benefits Management System (VBMS). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of service connection for hypertension and entitlement to a TDIU prior to November 15, 2010, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

From November 15, 2010, forward, the Veteran's service-connected peripheral neuropathy of the lower extremities is as likely as not of such nature and severity as to prevent him from securing or following substantially gainful employment.

CONCLUSION OF LAW

From November 15, 2010, forward, the criteria for an award of TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

A total disability rating may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. §§ 3.340, 4.16(a). This is so, provided that the unemployability is the result of a single service-connected disability ratable at 60 percent or more, or the result of two or more service-connected disabilities, where at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

The Veteran's service-connected disabilities include prostate cancer, rated as 100 percent disabling since December 17, 2015; peripheral neuropathy of the left lower extremity, rated as 10 percent disabling prior to November 15, 2010, and 40 percent disabling thereafter; peripheral neuropathy of the right lower extremity, rated as 10 percent disabling prior to November 15, 2010, and 40 percent disabling thereafter; kidney disease, rated as 30 percent disabling; PTSD, rated as 30 percent disabling; coronary artery disease, rated as 10 percent disabling prior to January 14, 2010, and 30 percent thereafter (with a temporary 100 percent rating from June 15, 2012, to September 30, 2012); diabetes mellitus, rated as 20 percent disabling; tinnitus, rated as 10 percent disabling since February 11, 2008; erectile dysfunction, rated as noncompensable; bilateral diabetic retinopathy, rated as noncompensable; and bilateral hearing loss, rated as noncompensable. The Veteran has had a combined rating of 70 percent or more during the entire appeal period. 38 C.F.R. § 4.25.

The Veteran meets the criteria for consideration for entitlement to TDIU on a schedular basis because the ratings satisfy the percentage requirements of 38 C.F.R. § 4.16(a). Even so, it must be found that he is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

Consequently, the Board must determine whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment (work that is more than marginal, which permits the individual to earn a "living wage"). Moore v. Derwinski, 1 Vet. App. 356 (1991). The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disability, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). An inability to work due to advancing age may not be considered. 38 C.F.R. §§ 3.341(a), 4.19 (2014). In making its determination, VA considers such factors as the extent of the service-connected disability, and employment and educational background. See 38 C.F.R. §§ 3.340, 3.341, 4.16(b), 4.19. 

The Veteran has stated that he became too disabled to work in 1988. See formal TDIU claim, received April 2009. His self-reported employment history reflects construction and mechanical work from 1983 to 1988. He reported a high school education, with no other education or training. See October 2012 TDIU application.

At the June 2011 Board hearing, the Veteran testified that he stopped working in 1989 after he fractured both arms and developed a chronic back disability. He suggested that his peripheral neuropathy of the legs also prevents him from working. At the time, he was working in construction as a welder and high rigger. With regard to his legs, the Veteran stated that he could not walk more than 50-75 feet and he feels unsteady on his feet. He reported use of a cane and a wheelchair. 

The Veteran underwent a February 2011 VA examination with regard to his TDIU claim. The examiner opined that the Veteran's service-connected disabilities had no functional impairments preventing all employment. The examiner added that the Veteran did not have cognitive impairments or functional impairments of any extremity. The examiner also stated that, while the Veteran's non-service-connected disabilities, such as his back pain and right traumatic foot injury, did limit employment, these did not totally prevent it. 

The Board notes that the February 2011 VA examination also shows findings consistent with severe peripheral neuropathy of the lower extremities, which resulted in decreased mobility and pain. The examination report cited a November 15, 2010, EMG/NVC study. Based on these findings, an April 2011 rating decision granted a higher rating of 40 percent for peripheral neuropathy of each lower extremity, from November 15, 2010, forward.

The Veteran underwent a second VA examination in October 2013. This examination included an audiological evaluation. The examiner indicated that the Veteran's hearing loss and tinnitus in no way limit his ability to function in an occupational environment. The Veteran was also evaluated with regard to the claim of service connection for hypertension. In this context, the VA examiner indicated that the Veteran cited his leg pain as the issue preventing employment. The examiner indicated that the Veteran's lower extremity peripheral neuropathy limits his ability to stand or walk for prolonged periods of time. The examiner, however, noted that the Veteran had been receiving SSA benefits since the 1980s for a non-service-connected issue of upper extremity arm injury from a work-related accident. 

While the Board acknowledges the opinions of the VA examiners, it notes that the ultimate issue of whether a TDIU should be awarded is not a medical issue, but is a legal determination for the adjudicator to make. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013).

Resolving doubt in favor of the Veteran, the Board finds that his service-connected peripheral neuropathy of the lower extremities renders him unemployable. The February 2011 VA examiner opined that the Veteran's service-connected disabilities do not prevent all employment. This suggests that the Veteran's service-connected disabilities prevent some forms of employment, but not others. The examiner, however, did not identify which forms of employment are unavailable to the Veteran due to his service-connected disabilities. In contrast, the October 2013 VA examiner indicated that the Veteran's peripheral neuropathy of the lower extremities, which has been diagnosed as severe, limits his ability to stand or walk for prolonged periods of time. The Board finds that such limitations prevent the Veteran from doing physical work, particularly construction work. The evidence, however, suggests that the Veteran might be able to do sedentary work. The Board finds that such option is not realistic given the Veteran's education level and limited work experience. As stated above, he has a high school education, has not worked since 1989, and, prior to that, worked mainly in construction. 

Based on the evidence above, the Board finds the evidence to be in equipoise with respect to whether the Veteran's service-connected peripheral neuropathy of the lower extremities precludes him from obtaining and retaining substantially gainful employment. When reasonable doubt is resolved in the Veteran's favor, the Board finds that the Veteran's service-connected disability is as likely as not of such nature and severity as to prevent him from securing or following substantially gainful employment. See 38 U.S.C.A. § 5107(b) ; 38 C.F.R. §§ 3.102, 4.3 (2013); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). Therefore, entitlement to a TDIU is warranted from November 15, 2010, forward. This is the date in which the Veteran's peripheral neuropathy of the legs was first shown to be severe. 

For the reasons explained below, the Board is remanding the issue of entitlement to a TDIU for the period prior to November 15, 2010.

ORDER

Entitlement to a TDIU is granted from November 15, 2010, forward.

REMAND

The Veteran is claiming service connection for hypertension. VA examinations have focused on whether the Veteran's hypertension is related to his service-connected diabetes mellitus. In January 2008 and February 2011, VA examiners noted that the Veteran's hypertension was not a complication of diabetes, as there was no renovascular disease, no nephrotic level proteinuria, and no renal biopsy suggesting diabetic nephropathy. The June 2012 Board remand, however, found these opinions to be insufficient as they did not consider whether the Veteran's hypertension had been aggravated by the service-connected diabetes. Thereafter, a new VA examination was provided in October 2013. The VA examiner opined that the Veteran's hypertension was less likely as not aggravated beyond the natural progression of the disease by the Veteran's service-connected diabetes mellitus.

During the appeal period, the Veteran's service-connected disability picture has become more complicated. Significantly, a January 2010 rating decision granted service connection for coronary artery disease. Subsequently, a temporary rating of 100 percent was assigned for myocardial infarction. See October 2012 rating decision. In view of this, the Board finds that the service connection analysis for hypertension should be expanded to include the Veteran's other service-connected disabilities. On remand, VA should obtain an addendum opinion in this regard.

As stated above, the Board is granting entitlement to TDIU from November 15, 2010, forward. While the evidence of record is not found to support a grant of TDIU prior to that date, a final determination on this issue is premature, as the issue is intertwined with the claim for hypertension. In addition, the Board finds that a retroactive medical opinion as to the Veteran's employability prior to November 15, 2010, would be helpful. See Chotta v. Peake, 22 Vet. App. 80 (2008). In this regard, the Board notes that the prior VA opinions have not adequately described the effects that the Veteran's service-connected disabilities have on his employability, with consideration of the Veteran's level of education and previous work experience, but not of his age or any impairment caused by non-service-connected disabilities. Similarly, the examiners have not specifically discussed the types of work that would be available or unavailable to the Veteran. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Forward the claims file, including a copy of this remand, to the appropriate examiner(s) to provide an addendum opinion. (A full VA examination should not be scheduled unless it is deemed necessary by the examiner or otherwise required by the evidence.) Review of the claims file should be noted in the examiner's report.

The examiner should respond to the following:

(a) With regard to the issue of service connection for hypertension:

(i) Is the Veteran's hypertension at least as likely as not (probability of 50 percent or more) related to service?

(ii) If not, is his hypertension at least as likely as not proximately due to any of his service-connected disabilities, to include, but not limited to, his diabetes mellitus?

(iii) If not, then is it at least as likely as not that the hypertension has been aggravated (permanently worsened beyond it natural progression) by any of his service-connected disabilities, to include, but not limited to, his diabetes mellitus or coronary artery disease?

If aggravation is found, the examiner should also state, to the extent possible, the baseline level of disability prior to aggravation. This may be ascertained by the medical evidence of record and also by the Veteran's statements as to the nature, severity, and frequency of his observable symptoms over time. 

The examiner should provide a complete rationale, with consideration of both the lay and medical evidence of record. If an opinion cannot be offered without resorting to speculation, the examiner should so state and explain why a non-speculative opinion cannot be offered. 

(b) With regard to the issue of entitlement to a TDIU prior to November 15, 2010, the examiner is requested to describe the functional impairment caused by each of the service-connected disabilities and to state how they might have impacted the Veteran's ability to work at any point prior to November 15, 2010. 

Consideration should be given to the Veteran's level of education, special training, and previous work experience, but not to age or any impairment caused by nonservice-connected disabilities. 

The examiner should provide a complete rationale, with consideration of both the lay and medical evidence of record. If an opinion cannot be offered without resorting to speculation, the examiner should so state and explain why a non-speculative opinion cannot be offered. 
.
2. If any benefit sought on appeal remains denied, issue a Supplemental Statement of the Case before returning the case to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). All claims remanded for additional development or other appropriate action must be handled expeditiously. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Eric S. Leboff 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs